[Crim. No. 141. First Appellate District.—May 27, 1908.]

In re L. DESANTA, on Habeas Corpus.

CONSTITUTION—CONSTRUCTION—MUNICIPAL ORDINANCE AVOIDED BY SUB-SEQUENT GENERAL LAW—CONFLICT.—Under section 11 of article XI of the constitution authorizing any county, city or town to "make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws," a municipal ordinance, the enforcement of which is in direct conflict with a subsequent general law on the same subject matter, is thereby avoided.

ID.—MILK ORDINANCE OF CITY AND COUNTY OF SAN FRANCISCO AVOIDED BY GENERAL MILK LAW OF 1907.—Though the milk ordinance of the city and county of San Francisco was enacted prior to the general milk statute of 1907 (Stats. 1907, p. 265 et seq.), the later statute is, both as to the definition of pure and impure milk, and as to the penalty provided for the violation thereof, in direct conflict with the provisions of the prior ordinance, and the ordinance cannot thereafter be enforced.

ID.—VOID IMPRISONMENT UNDER ORDINANCE—HABEAS CORPUS.—An imprisonment for misdemeanor imposed under the ordinance, after the passage of the inconsistent general law, is void, and the prisoner is entitled to his discharge upon *habeas corpus*.

PETITION for discharge upon writ of *habeas corpus*.

The facts are stated in the opinion of the court.

James C. Sims, J. A. Spinetti, and Roland Becsey, for Appellant.

Wm. H. Langdon, District Attorney, and Louis Ferrari, Assistant District Attorney, for Respondent.

COOPER, P. J.—The prisoner seeks to be released on *habeas corpus* from imprisonment under a judgment convicting him of a misdemeanor, to wit, selling milk containing less than three and four-tenths per cent of fats, in violation of certain ordinances of the city and county of San Francisco, known as Ordinance No. 2944, and Amendatory Ordinance No. 1208. The material parts of said ordinances necessary for a discussion of this case are as follows:

"Section 8. The terms 'adulterated,' 'impure,' 'unhealthy' and 'unwholesome,' as used in this ordinance, mean (1st) milk containing less than 12 per centum of milk solids; (2nd) milk containing more than 88 per centum of water or fluids; (3rd) milk containing less than 3.3 per centum of fats from January 1st to April 30th, and 3.4 per centum of fats from May 1st to December 31st, of each year. . . .

"Section 18. Any person who shall violate any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars and not more than

five hundred dollars; or by imprisonment in the county jail for not less than ten days nor more than one hundred days."

It is claimed that the part of said ordinance involved here is void, because in conflict with the state law upon the same subject, and thus in contravention of section 11 of article XI of the state constitution, which provides as follows: "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

The legislature, long after the adoption of the ordinance, passed an act entitled, "An act to prohibit adulteration and deception in the sale of dairy products, and defining adulteration, in dairy products; to establish a standard of quality in dairy products, and to provide for enforcing its provisions," approved March 15, 1907 (Stats. 1907, p. 265 et seq.). The act consists of eight sections, with various subdivisions of such sections, and evidently was intended to cover fully the subjects indicated in its title. So far as necessary for the purposes of this opinion its provisions are as follows:

"Section 1. It shall be unlawful for any person to produce, manufacture or prepare for sale, or to sell or offer for sale, or have on hand for sale, any milk or product of milk that is adulterated within the meaning of this act. . . .

"It shall be unlawful for any person under this act, when selling or offering for sale, or having on hand for sale, milk or any product of milk, to use the words 'milk,' 'condensed milk,' 'sweetened condensed milk,' 'condensed skimmed milk,' 'evaporated cream,' 'cream' or 'butter,' either verbally or printed or written on any label or printed matter used in connection with the sale or offering for sale, or having on hand for sale, of milk or any product of milk, or upon any bill of fare used in any hotel, restaurant or other place where meals are served, when the article shall not conform with the provisions of section 2 of this act.

"Section 2. Milk and the products of milk enumerated in this section shall be deemed adulterated within the meaning of this act if it or they shall not conform with the following definitions or standards:

"1. Milk is the fresh, clean, lacteal secretion obtained by the complete milking of one or more healthy cows, properly fed and kept, excluding that obtained within fifteen days be-

fore and five days after calving, and contains not less than three per cent of milk fats, and not less than 8.5 per cent of solids not fat. . . .

"Section 3. It shall be the duty of the State Dairy Bureau now existing under the laws of this state to enforce the provisions of this act, provided that nothing in this act shall be construed to prevent any city or county board of health, or other city and county official, from enforcing the provisions of this act.

"Section 4. Any person who shall violate any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $25 nor more than $200, or by imprisonment in the county jail for not less than ten nor more than sixty days. . . . All fines collected under this act shall be paid to the State Dairy Bureau when the complaint is made through the State Dairy Bureau, and the State Dairy Bureau shall pay the same to the State Treasurer, and the amount paid by the State Dairy Bureau to the State Treasurer is hereby appropriated to the use of the State Dairy Bureau in enforcing. this act for the fiscal year in which the amount was paid to the State Treasurer. . . .

"Section 6. It shall be the duty of the district attorney, upon application of the State Dairy Bureau, or of any city or county board of health, to attend to the prosecution in the name of the People of any complaint entered for violation of any of the provisions of this act within his district.

"Section 7. All acts or parts of acts inconsistent with this act are hereby repealed."

The act provides fully as to correctly labeling all packages of dairy products, and defines skimmed milk, condensed milk, condensed skimmed milk, cream, evaporated cream, milk fat, butter fat and butter. The statute is a general law, and the question is as to whether or not the part of the ordinance under which the prisoner was convicted is in conflict with the statute, for if so, it must fall in submission to such general law.

There is no question as to the rule that an ordinance or by-law must not be in conflict with the general law upon the same subject; but the question as to whether or not an ordinance or by-law is in conflict with the general law is some-

times difficult of solution, and necessarily cannot be determined by any fixed rule. It is the duty of courts to examine the ordinance, the general law, the subject matter, the evils intended to be remedied, and then to apply the principles of common sense to the solution of each particular case as it arises. It is and should be always the endeavor of courts to sustain an ordinance or by-law, and, if possible, to reconcile and uphold both the ordinance and the statute. Courts are loath to declare void any ordinance of a sanitary nature, or relating to and preventing the sale of adulterated or impure food or other products; but in case there is a conflict, in the light of the above rule, the duty of the court must be performed.

After carefully comparing the ordinance in this case and the general law, we are forced to conclude that the ordinance is in conflict with such law. They both prescribe a punishment for the same acts, to wit, the sale of impure or adulterated milk. The ordinance provides a penalty of not less than $25 nor more than $500, while the statute fixes the fine at not less than $25 nor more than $200. The ordinance provides that the imprisonment must not be less than ten nor more than one hundred days, and the statute provides for imprisonment for not less than ten nor more than sixty days.

Under the statute milk is deemed pure and may be sold anywhere in the state if it contains three per cent of fats; but under the ordinance anyone who sells milk containing three per cent of fats and less than the percentage named in the ordinance commits a crime. Under the general law milk may be sold where it contains nine and twenty-five hundredths per cent of milk solids, but under the ordinance every person who sells milk containing nine and twenty-five hundredths per cent of solids commits a crime unless the milk contains at least twelve per cent of milk solids. It is thus plain that the ordinance prohibits and prescribes a punishment for the same acts that are legal under the statute. It also fixes a different standard for milk from that prescribed by the statute. The ordinance not only prescribes a punishment for the same acts that are punished under the general law, but it prescribes a punishment for acts that are legal under the general law. It prescribes a greater punishment than the general law for the same acts which are punishable

under the general law; and it prescribes a greater punishment for acts that are no crime under the general law than the general law prescribes for acts that it makes criminal. The general law provides for inspection of milk and dairy products by the State Dairy Bureau, and that all fines shall be paid to the State Dairy Bureau and for its use in enforcing the act. The ordinance makes no such disposition of fines. The general law provides for its enforcement either by the State Dairy Bureau or the city or county board of health. It provides that the city or county board of health may enter and inspect premises where milk or products of milk are produced or manufactured.

It is thus plain that the state law provides a general and universal scheme to prevent the adulteration and sale of impure milk or dairy products. Milk which is pure within the meaning and definition of such law may be sold anywhere in the state. It may be sold in Los Angeles and in San Francisco. It is said that the legislature, in fixing a minimum beyond which no board of supervisors could go—that is, that no board could by ordinance make it legal to sell milk which did not come up to the standard prescribed by the state law—did not intend to prohibit such board or legislative body from raising the standard or fixing the standard for such city. We do not agree with such contention. The effect of the general law is to authorize the sale of milk which comes up to the standard there prescribed. An ordinance which prescribed a different standard, and punishes anyone for selling milk which is pure within the standard prescribed by the general law, is in conflict with the general law.

In *Mayor etc. of New York* v. *Nichols,* 4 Hill (N. Y.), 209, it appeared that the defendant had been sued to recover the amount of certain penalties incurred for the violation of an ordinance of the city relating to the sale of hay, and providing for inspectors to inspect and weigh hay, and to mark the quality and weight on the bundles, and providing that any person who should sell hay without first having the same inspected and weighed according to the requirements of the ordinance, should forfeit the sum of $5 for every bundle sold. The general laws of the state provided that every person who should put up and press any bundle of hay for market should mark or brand in a legible manner the initials of

his Christian name and his surname at full length, and the name of the town in which he resides, on some board or wood attached to the bundle. The general statute made further provision as to the hay being of good quality, and provided a penalty for any violation of its provisions. The court held that the ordinance must give way to the provisions of the Revised Statutes, and in the opinion said: "These provisions obviously authorize a sale of pressed hay without inspection, and the corporation of the city of New York possessed no power to repeal or supersede them. If they are violated a remedy is pointed out, and this remedy must be resorted to. The system of inspecting hay is abolished by the statute, and in place of it the seller is required to prepare the article for market in a particular manner at the peril of being subjected to the penalties annexed."

In *State* v. *Tyrrell,* 73 Conn. 407, [47 Atl. 686], it was held that the defendant could not be prosecuted for a violation of a city ordinance making it unlawful to offer or expose for sale certain milk without first having obtained from the board of health of the city a license where the subject was fully covered by the statute of the state. The court said: "Judging the ordinance of the City of Waterbury referred to in the statement by its words, we should be led to believe that the purpose of the board of aldermen in passing it was to prevent the sale and consumption in that city of impure or adulterated milk. To accomplish that purpose the ordinance is intelligent, consecutive and adapted to the end in view. But the charter of the city forbids the aldermen to enact any ordinance upon any matter which is or shall hereafter be regulated by any public statute, or power to regulate which has been or shall be conferred upon any other authority by any public statute. The General Statutes of 1888, sections 2658 to 2664, inclusive, together with chapter 235, p. 578, of the Public Acts of 1895, provide full regulations in respect to adulteration of milk. If then the purpose of the aldermen was to regulate the sale of impure milk in Waterbury, it would appear that the ordinance was in excess of their power to enact."

In *Keith* v. *State,* 94 N. C. 933, it was held that an ordinance of a city or town, which makes an act which is punishable as a criminal offense under the general laws of the state

an offense against the city or town, was void because in conflict with the general laws. The court said: "So much of that ordinance as is material here undertakes to make an assault upon a public officer in the City of Raleigh, while in the discharge of his official duty, an offense against the city punishable by fine or imprisonment. It is indictable under the general law of the State to so assault such officer, and it is settled that a town ordinance, which undertakes to make that which constitutes a criminal offense under the general law of the state an offense against the town, punishable by fine or imprisonment, is inoperative and void."

The rule is thus stated in McQuillin on Municipal Ordinances, section 499: "Under the usual grant of municipal powers, which in general terms includes the authority to enact all necessary ordinances, to preserve the peace and advance the local government of the community, the local corporation cannot provide by ordinance for the punishment of an act constituting a misdemeanor or crime by state statute. The cases in the note fully illustrate the rule." The author cites many authorities which sustain the text.

Our own supreme court has in many cases held the rule in accordance with the above authorities. In *Ex parte Keeney*, 84 Cal. 304, [24 Pac. 34], it was held that an ordinance of the city and county of San Francisco, regulating the granting of certificates of death, and the issuance of permits for interments, and punishing the health officer as for a misdemeanor for noncompliance therewith, was unconstitutional and void because in conflict with the provisions of the Political Code on the same subject. It was there said: "It is very clear that by this article the legislature has undertaken, as a part of the provisions of the general law relating to the public health, through a local department of the state government, to wit, the board of health for the City and County of San Francisco, all of the members of which except the mayor of the City and County are appointed by the Governor, to manage and control certain—we do not say all, but certain—of the sanitary regulations of the city and county, and contiguous harbor of San Francisco; and by section 3025 has particularly undertaken to manage and control the conditions and terms upon which permits for the interment of human bodies within said city and county may be issued, and

by whom. . . . It follows that any order or ordinance, or provision of any order or ordinance of the municipality, which conflicts with the provisions of this general law, is prohibited and forbidden to the municipality,—is unauthorized and void.''

In *Ex parte Solomon*, 91 Cal. 440, [27 Pac. 757], it was held that an ordinance of the city and county of San Francisco, fixing the minimum penalty for having lottery tickets in possession at $250, or imprisonment for three months, and allowing a maximum penalty of $1,000, or imprisonment for six months, was void, and not in harmony with the provisions of the Penal Code as to kindred offenses. It was there said in a concurring opinion by Justice Patterson that there was nothing in the nature of the offense which calls for any severer penalty for its commission in a thickly settled community than for its commission in the country.

So in this case, there is no reason why in the city and county of San Francisco milk should contain a greater percentage of fats or solids than in other parts of the state. The law should be uniform unless there is some valid reason for its being otherwise. In *Re Sic*, 73 Cal. 142, [14 Pac. 405], the question was fully discussed in an opinion by Mr. Justice Temple in his usual clear style; and it was held that an ordinance of the city of Stockton in regard to the smoking of opium, intended to punish precisely the same acts as were punishable under section 307 of the Penal Code, was in conflict with the general law and void. The learned justice there said: ''The section plainly covers the same ground as the Penal Code. It was probably intended to cover some supposed defects in the Penal Code; still it denounces as criminal precisely the same acts which are intended to be prohibited by the Code. It is admitted that no ordinance is valid which conflicts with the general laws of the state. . . . It would seem that the ordinance must be conflicting with the general law which may operate to prevent a prosecution under the general law. The constitution provides that no one should be twice put in jeopardy for the same offense. If tried and convicted or acquitted under the ordinance he could not be again tried for the same offense under the general law.''

In *Flood* v. *State,* 19 Tex. Cr. App. 584, an ordinance relating to selling goods on Sunday was held void where the subject was covered by the state law.

In *State* v. *McNally,* 48 La. Ann. 1450, [21 South. 27], an ordinance regulating the number of hours during which mechanics and laborers shall be employed each day on public work in the city was held void because the offense was made indictable by statute.

It is not necessary to discuss the doctrine that where the act prohibited is a crime both under the ordinance and the statute, and the punishment does not exceed that prescribed by the statute, the conviction will be sustained. In this case the act charged relates to the very things treated of by the general law but is not made a crime by the general law. Counsel for the people earnestly calls our attention to *Polinsky* v. *People,* 73 N. Y. 65, which it is claimed is directly in point. We have carefully examined that case, and find in it nothing contrary to the views we have expressed herein. The general statute of the state prohibited the sale or exposing for sale of adulterated milk, and prescribed a punishment therefor. It did not pretend to cover the subject of traffic in milk or bringing impure milk into the city of New York. The court held that the offense charged was bringing adulterated milk into New York, an offense "not embraced in the statute." The opinion fully agrees with the views we have expressed, but upheld the ordinance for the very plain reason that that subject was not covered by the general law. In the opinion it is said: "If the board of health could, under its general power to enact sanitary ordinances, pass an ordinance prohibiting the same act which was already prohibited by the statute, an indictment would lie for either a violation of the ordinance or of the statute. A conviction under the ordinance would be a conviction for an offense the punishment of which is prescribed by some other statute than the general statute for the punishment of misdemeanors, and the Statute of 1862 would govern as to the punishment. But the difficulty with the argument addressed to us upon the point is that it proceeds upon a false assumption. The third count charges an offense not embraced in the statute of 1862, but which is embraced in the ordinance, to wit, bringing adulterated milk into the City of New York for sale. The stat-

ute relates only to *selling or exposing* impure or adulterated milk for sale. The ordinance may be violated, and the offense of bringing into the city impure or adulterated milk for sale may be complete without either selling or exposing it for sale."

In *Re Murphy*, 128 Cal. 29, [60 Pac. 465], is also relied upon to sustain the ordinance. That case is not in point, and simply holds that the game of "keno," as described in the ordinance discussed, is not a percentage game prohibited by section 330 of the Penal Code, the case being directly in line with *Polinsky* v. *People*, 73 N. Y. 65. The court said: "Since it was competent for the city by ordinance to prohibit all games not denounced by the statute, lack of jurisdiction is not made to appear."

In the case at bar the ordinance is aimed at the very question covered by the statute—the sale of milk containing less than the proper percentage of fats, and, if enforced, would supersede the statute.

We conclude that the ordinance in the respects involved in this case is void, and the prisoner must be discharged, and is so ordered.

Kerrigan, J., and Hall, J., concurred.