[Crim. No. 350.    First Appellate District.—September 7, 1911.]

Ex Parte LEE JOHN on Habeas Corpus.

COUNTY ORDINANCE—DISINTERMENT AND REMOVAL OF BURIED PERSON—
    PERMIT FROM HEALTH OFFICER—FEE FOR REMOVAL FROM COUNTY—
    VALIDITY.—A county ordinance making it unlawful to disinter, exhume or remove the remains of any deceased person buried within the county without a permit from the health officer in case he shall be satisfied that the disinterment and removal of the remains can be made without danger to the public health, and providing for a fee of ten dollars in case the remains are permitted to be removed from the county, and a penalty for such disinterment and removal without a permit, is a valid ordinance and is in conflict with no state law.

ID.—STATUTE REGULATING DISINTERMENT AND REMOVAL OF REMAINS IN
    MUNICIPALITIES NOT VIOLATED BY COUNTY ORDINANCE.—The statute in force, when the county ordinance was violated, which relates only

to the disinterring and removal of the remains of persons buried in some city, town, or city and county, and operates for protecting the inhabitants of the thickly populated municipalities of the state, is not violated by the provisions of such county ordinance. The ordinance contains requirements not contained in the statute, and is made more extensive in its scope, and operates over the entire territory of the county alike, while the scope of the statute relative to the disinterring of bodies is more restricted, and operates only within populous municipalities.

ID.—COUNTY ORDINANCE CONSISTENT WITH ACT FOR REGISTRATION OF DEATHS—PERMIT FOR REMOVAL FROM STATE BOARD—LOCAL PROVISION RETAINED.—The act of March 18, 1905, "for the registration of deaths," which provides that disinterred bodies shall be treated as infectious or dangerous to the public health, and requires the approval of the state board of health to their removal or transportation, and which also especially provides that "the consent of the local health authorities shall be first obtained and all local health regulations strictly observed," is not inconsistent with the county ordinance.

ID.—LICENSE OR PERMIT FROM DIFFERENT AUTHORITIES.—The mere fact that a license or permit is required from two different authorities does not create a conflict.

ID.—COUNTY ORDINANCE A SANITARY REGULATION — FEE NOT A MERE REVENUE MEASURE.—The county ordinance is a sanitary regulation, and it cannot be said that the fee exacted in case of removal of the remains from the county is so disproportionate to the services necessary to be performed in the faithful safeguarding of the public health in such case as to warrant this court in holding that the purpose of the ordinance is revenue and not sanitary regulation.

ID.—HABEAS CORPUS—VIOLATION OF VALID ORDINANCE.—Where no question is made that the terms of county ordinance were violated, if the ordinance is valid, and there is no ground for holding it invalid, the writ of *habeas corpus* applied for to test its validity must be discharged, and the petitioner remanded to the custody of the county sheriff.

PETITION for discharge on writ of *habeas corpus* to the Sheriff of San Mateo County.

The facts are stated in the opinion of the court.

Wm. Hoff Cook, Charles Steward, and Jas. A. Coogin, for Petitioner.

Franklin Sward, District Attorney, for Respondent.

HALL, J.—Petitioner was held in custody by the sheriff of the county of San Mateo, under a judgment rendered upon his conviction of having violated the provisions of an ordinance, number 176, relating to the disinterment and removal of remains of deceased persons, interred within the limits of San Mateo county, and adopted by the board of supervisors of said county in the month of July, 1901.

In this proceeding the petitioner attacks the validity of the ordinance itself, and makes no point as to the sufficiency of the complaint as stating an offense under the ordinance, if the ordinance be valid.

It is substantially charged in the complaint upon which petitioner was convicted that he disinterred a dead body without first making application for, and obtaining a permit so to do, from the health officer of San Mateo county, as required by said ordinance.

We also understand that the district attorney of San Mateo county, who appeared in opposition to the writ, concedes that the only offense charged against petitioner is that of violating said ordinance. The only question presented to this court for decision is thus the question as to the validity of the ordinance.

The first and principal contention of petitioner is that the ordinance in question is in conflict with an act entitled "An act to protect public health from infection caused by exhumation and removal of the remains of deceased persons," adopted in 1878, and amended in 1889. This act was certainly in force at the time of the passage of the ordinance, and if the ordinance is in conflict with the statute the ordinance never had any validity. (*Banaz* v. *Smith*, 133 Cal. 102, [65 Pac. 309].) The question is thus presented, Are the provisions of the ordinance in question in conflict with the provisions of the statute? For it is not denied that the board of supervisors may make and enforce within the county all such police and sanitary regulations as are not in conflict with general laws. (Pol. Code, sec. 4041, subd. 28; Const., art. XI, sec. 11.)

The first section of the ordinance provides that:

"It shall be unlawful to disinter or exhume from any grave, vault or other burial place the body or remains of any deceased person interred within the limits of said county of

San Mateo, state of California, unless the person or persons so doing shall have first complied with all the requirements of this ordinance."

The second section provides that: "Before the body or remains of any deceased person which shall have been buried or interred in any grave, vault or other burial place within the limits of said county of San Mateo, shall be disinterred, exhumed or removed, the person or persons so desiring to disinter, exhume or remove such body or remains shall make application to the health officer of said county of San Mateo." The section proceeds further to set forth the matters that must be stated in the application.

The third section provides that "Upon the receipt of the application mentioned in section two of this ordinance, it is made the duty of the health officer of said county of San Mateo to investigate said application, and ascertain whether the disinterment or removal of the remains of the person in said application mentioned can be made without danger to the public health, and if satisfied thereof said health officer shall grant said application, and shall issue therefor a permit to be executed in triplicate." The section further provides for the form of the permit, and provides that the health officer may, if deemed necessary for the safety of the public health, require such body or remains when exhumed to be immediately placed in a zinc-lined box hermetically sealed. Further provisions are made in said section for the collection of a fee of ten dollars and the disposition thereof by the health officer.

Section 4 prohibits the keeper of cemeteries from allowing remains of deceased persons buried in such cemetery from being disinterred or removed without first receiving and taking up the permit of the health officer, and requires such keeper of the cemetery to file and keep the permit, and make certain records pertaining to the removal of the remains.

Section 5 provides that no fee shall be collected where the body is to be interred in another place in the county of San Mateo.

Section 6 fixes the penalty for the violation of any of the provisions of the ordinance, and section 7 provides for the taking effect of the ordinance.

The ordinance, it is thus seen, contains quite complete regulations concerning the disinterment of the remains of deceased persons, wherever buried within the limits of the county of San Mateo, and regulates and requires a permit for such disinterment in all cases, though no fee is required for such permit where the body is to be reinterred in the county of San Mateo.

On the other hand, a careful examination of the statute in force when the ordinance was passed (Act 545, p. 81, Deering's General Statutes, edition of 1909) discloses that the act relates only to the disinterring of the remains of deceased persons buried within the limits of some city, town, or city and county, and the transportation of such disinterred remains through the streets of some city, town, or city and county, and has no application to the removal of remains of deceased persons from one place of interment to another place of interment within this state, except where the body has not been buried for more than one year.

The first section of the act in question provides that "It shall be unlawful to disinter or exhume from a grave, vault, or other burial place, the body or remains of any deceased person, unless the person or persons so doing shall first obtain from the board of health, health officer, mayor, or other head of the municipal government of the city, town or city and county where the same are deposited, a permit for said purpose." The grammatical construction of this sentence requires that the permit shall be issued by one or other of the designated officers of the *city, town* or *city and county* where the remains *are deposited.* Under this sentence no permit is required unless the remains are deposited or buried in some city, town or city and county. The remaining part of the section provides: "Nor shall such body or remains disinterred, exhumed or taken from any grave . . . be removed or transported through the streets or highways of any city, town or city and county, unless the person or persons removing or transporting such body or remains shall first obtain from the board of health or health officer (if such board or officer there be) and from the mayor or other head of the municipal government of the city or town, or city and county, a permit in writing so to remove or transport such body or remains in and through such streets

and highways." Here again the permit is issued only by
an officer of the city, town or city and county through
whose streets it is desired to transport the body. No at-
tempt in this section seems to be made to regulate the
exhumation of bodies except from places of burial or deposit
within municipalities, nor to require a permit for the trans-
portation of such exhumed bodies except through the streets
of such municipalities.

That this construction of the section is correct is strength-
ened by the wording of the next section. After providing
for the conditions upon which permits may be issued and
the contents thereof, it proceeds as follows: "The officer of
the municipal government of the city or town or city and
county, granting such permit shall require to be paid for
each permit the sum of ten dollars," etc.

Section 3 provides a penalty for disinterring, exhuming
or removing from a grave, vault or burial place the body
of a deceased person without a permit therefor. While this
language is more general than the language of the two pre-
ceding sections, it must be read in connection therewith, and
thus read only penalizes those who have violated the pre-
ceding sections.

Section 4 fixes the penalty for transporting the disinterred
remains of deceased persons through the streets or highways
of any city or town, or city and county without a permit,
as described in section 2.

Thus far the provisions of the act seem aimed in the
main only at protecting the inhabitants of the more thickly
populated portions of the state, to wit, the inhabitants of
cities, towns, and cities and counties, from the dangers to be
feared from the exhumation and transportation of disin-
terred bodies of deceased persons.

Section 5 provides a reward for informers of violations of
the act.

Section 6 still further restricts the operation of the act,
and sounds the keynote to the purpose and object of its
enactment. It provides: "Nothing in this act contained shall
be taken to apply to the removal of the remains of deceased
persons from one place of interment to another cemetery
or place of interment within this state; provided that no
permit shall be issued for the disinterment of any body unless

such body has been buried for one year or more, without the written consent of the mayor, chairman of the board of supervisors, or city council of any municipality of the state.'' In other words, the provisions of this act only apply where the body is to be removed to some place without the state, except where the body has been buried for not more than one year.

A comparison of the provisions of the ordinance with the provisions of the statute discloses that both deal with the same general subject, to wit, the disinterment of the remains of deceased persons. The ordinance contains requirements not contained in the statute, and is much more extensive in its scope, and operates over the entire territory of the county alike, while the statute, if we are correct in our reading of it, operates only within cities, towns, and cities and counties, at least so far as the disinterring of bodies is concerned, which is the only matter regulated by the ordinance.

These conditions as to the scope of the statute and of the ordinance bring this case within the rule approved in *Ex parte Hong Shen,* 98 Cal. 681, [33 Pac. 799] ; *In re Murphy,* 128 Cal. 29, [60 Pac. 465], and *In re Hoffman,* 155 Cal. 115, [132 Am. St. Rep. 75, 99 Pac. 517].

In the Hong Shen case it was held that an ordinance is not in conflict with a state law simply because it makes other and different regulations for the sale of an article of commerce than those provided by a statute of the state.

In the Murphy case it was held that it was competent for an ordinance to prohibit all games played for money, though such general language included games prohibited by the statute; that in such case the ordinance would not be void and would be given operation as to the games not prohibited by the statute. Murphy was charged under the ordinance with playing keno, which it was claimed was a banking game and thus included within the games prohibited by the statute. The court declined to take judicial notice of the fact that keno was a banking game. Under the doctrine of this case the ordinance under which petitioner was charged should be given operation as to disinterments of remains not buried in a city, town or city and conuty, even though it should be held inoperative as to disinterments in such municipalities.

In the Hoffman case it was held that an ordinance that made another, different and more onerous regulation for the sale of milk than that prescribed by the statute was not for that reason in conflict with such statute or void. The state law prohibited the sale of milk unless it was of a certain standard. The ordinance required a different and higher standard. The court said: "Nor is it any objection to the validity of the ordinance that its regulatory provisions and the penalty for its violation differ from those of the state law."

Counsel for the petitioner attacks the soundness of the doctrine approved in the Hoffman case, and urges that it is in conflict with other cases decided in this state. It is sufficient for us to say that it is the very latest decision of the highest court of this state upon the subject, and is of binding authority upon this court.

*In re Desanta,* 8 Cal. App. 295, [96 Pac. 1027], cited by petitioner, and decided by this court, cannot, since the decision in the Hoffman case, be considered as authority.

*In re Sic,* 73 Cal. 142, [14 Pac. 405], simply holds "that there is a conflict where the ordinance and the general law punish precisely the same acts." The concluding sentence of the opinion is: "We do not wish to be understood as holding that the sections of the ordinance which make criminal other acts not punishable under the general law are void because the legislature has seen fit to legislate upon the same subject."

The gist of the decision in *Ex parte Keeney,* 84 Cal. 304, [24 Pac. 34], also cited by petitioner, is to the effect that the general law required the health officer of the city and county of San Francisco to issue burial permits under certain conditions, and that an ordinance that attempted to punish him for doing what the general law not only authorized but required him to do was void.

In *Ex parte Gray,* 11 Cal. App. 125, [104 Pac. 476], this court simply held that an ordinance that attempted to require plumbers to obtain a license to carry on the plumbing business, from a special board created under the ordinance, was in direct conflict with an act entitled "An act to grant to boards of health or health officers in cities and cities and counties the power to regulate the plumbing and drainage

17 Cal. App.—5

of buildings, and provide for the registration of plumbers,'' and which provided that a license to carry on the plumbing business shall be issued only after a satisfactory examination by the board of health.

The case of *People* v. *Newman,* 96 Cal. 605, [31 Pac. 564], also cited by petitioner, presented a case of a direct conflict between an ordinance of the board of supervisors, attempting to establish a fire department and to provide for the appointment of fire commissioners, with an act that was a constituent part of the charter and established a fire department, and provided for the appointment of the fire commissioners.

We do not think that any of the California cases cited by petitioner are in point save the Desanta case, which can no longer be considered as authority.

The ordinance in question cannot be held void, or in conflict with the act of 1878 as amended in 1889.

It is also claimed that the ordinance is in conflict with an act approved March 18, 1905, and entitled ''An act for the registration of deaths. . . . '' (Stats. 1905, p. 115.)

This act consists of nineteen sections, and is manifestly an act intended to promote and provide for the gathering and preservation of vital statistics. The case between the ordinance and this statute is very similar to the case between an ordinance and a statute considered in *Borough of Yeadon* v. *White,* 36 Pa. Super. Ct. 367, where the ordinance was sustained as not in conflict with the general law. No attempt is made to point out any particulars in which the act of 1905 conflicts with the ordinance, and we have found none.

Neither do we find anything in the act of 1907 relating to the preservation of the public health (Stats. of 1907, p. 893) that is in conflict with the ordinance in question. This act consists of twenty-two sections dealing with a great number of sanitary matters. One subdivision of one of these sections provides that disinterred bodies shall be treated as infectious or dangerous to the public health, and requires the approval for the removal or transportation of such to be obtained from the state board of health. The subdivision in question, however, concludes with a proviso to the effect that ''the consent of the local health authorities shall be first obtained, and all local health regulations strictly observed.'' It is thus perfectly clear that the legislature, in enacting

the statute of 1907, did not intend to repeal or interfere with local ordinances concerning the disinterment of the remains of deceased persons, and we find no such conflict as would work an abrogation of the ordinance. The mere fact that a license or permit is required from two different authorities does not create a conflict. (*Brazier* v. *Philadelphia,* 215 Pa. 297, [64 Atl. 508].)

We are of the opinion that the ordinance in question cannot be held void as in conflict with the general law of the state.

It is also claimed that the ordinance in question is one for the purpose of raising revenue, and for that reason void.

Little need be said, we apprehend, upon this subject. The matter of the disinterring and removal of dead bodies is clearly one calling for sanitary regulations. The ordinance in question requires the health officer, in every case where application is made for a permit to disinter or remove the remains of a buried body, to investigate said application, and ascertain whether the disinterment or removal can be made without danger to the public health, and if so satisfied to grant the application. While the fee of ten dollars exacted for such permit is somewhat large, we cannot say that it is so disproportionate to the services necessary to be performed in the faithful safeguarding of the public health as to warrant us in holding that the purpose of the ordinance is revenue and not sanitary regulation.

No other point is urged for the discharge of the petitioner.

The writ is therefore discharged, and the petitioner is remanded to the custody of the sheriff of San Mateo county.

Lennon, P. J., and Kerrigan, J., concurred.