[Crim. No. 198. Third Appellate District.—November 14, 1912.]

In the Matter of the Application of CHARLES ZANY for a Writ of Habeas Corpus.

COUNTY ORDINANCE REGULATING LIQUOR TRAFFIC—CONFLICT WITH LOCAL OPTION LAW—INVALIDITY UNDER CONSTITUTION.—A county ordinance regulating the liquor traffic within the county limits, voted by the electors of the county under section 4058 of the Political Code, conflicts with the Local Option Act of April 4, 1911, "for the regulation of the traffic in alcoholic liquors," and is invalid under section 11 of article XI of the constitution, providing that "any county, city, town, or township may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws."

ID.—LOCAL OPTION ACT A GENERAL LAW.—The Local Option Act of 1911 is a general law, within the meaning of section 11 of article XI of the constitution. It provides a state wide scheme, by which "any incorporated city or town, or that portion of any supervisorial district, not included within the boundaries of any incorporated city or town," may petition to the appropriate legislative body to call an election to determine "whether the sale of alcoholic liquors shall be licensed in such city, town, or supervisorial district outside of incorporated cities and towns." That the county ordinance conflicts with such general law admits of no doubt.

ID.—CONSTRUCTION OF LOCAL OPTION ACT—LIMITS OF AUTHORIZATION TO CALL ELECTION.—The Local Option Act does not authorize any county in its entirety, either inclusive or exclusive of incorporated cities and towns, to petition any legislative body to call an election for the purpose specified. The obvious intention of the legislature was to authorize each of the subdivisions of the county specified therein, to act independently of every other, in determining the question for itself, unaffected by the votes of any other of the subdivisions named therein.

ID.—ORDINANCE UNDER INITIATIVE AND REFERENDUM LAW—EFFECT OF COUNTY WIDE VOTE UPON LOCAL OPTION DISTRICTS—REASONABLE INTERPRETATION OF LAW—RESTRICTION OF SCOPE.—Where the county ordinance regulating the liquor traffic was enacted by a county wide vote of the people pursuant to a law providing for the initiative and referendum, which vote would conflict with local option districts within the county, which cannot be allowed, such law must have a reasonable interpretation, so as to restrict its scope and operation to subjects of general concern to the people of the county over which they may properly legislate.

ID.—CONSTRUCTION OF SECTION 22 OF LOCAL OPTION ACT.—The provision in section 22 of the Local Option Act that "nothing in this act shall be construed as putting any limitation, except such as are positively stated herein upon the police powers of cities, towns and counties," means that the police powers of cities, towns and counties are not limited by the act, except that the question "whether the sale of intoxicating alcoholic liquors shall be licensed," is a matter which the act has specifically conferred upon the incorporated cities and towns, and the supervisorial districts outside of the cities and towns to be acted upon each in its separate capacity. The county has no such right and is excluded therefrom; and its general police power cannot deprive the enumerated subdivisions of the powers conferred upon them only by the act.

ID.—HABEAS CORPUS UNDER UNCONSTITUTIONAL ORDINANCE.—The writ of *habeas corpus* will lie to test the unconstitutionality of an ordinance, under which the prisoner is held for trial. The liberty of a citizen should not be taken from him, so as to put him to the expense and ignominy of a criminal prosecution upon a complaint having no warrant of law to support it. A void law is no law, and a prosecution under it is without the authority of law.

APPLICATION for discharge upon a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

Ben Berry, and Gordon A. Stewart, for Petitioner.

L. J. Maddux, for Respondent.

CHIPMAN, P. J.—It appears from the petition that petitioner, Charles Zany, is imprisoned by the authority of a warrant of arrest issued on July 11, 1912, upon a complaint filed that day in the justice's court of Modesto township, county of Stanislaus. It is alleged in the petition that said complaint is invalid, illegal, and void in that it fails to charge a public offense and conferred no authority on the said justice of the peace to issue said warrant; "that said complaint is founded upon and charges a violation of the terms and provisions of an ordinance enacted by the people of the county of Stanislaus, state of California, on the 14th day of May, 1912, which ordinance, marked exhibit 'B' is expressly referred to and made a part of this petition"; that no authority "is conferred by law upon the people of the county of Stan-

islaus to enact or adopt said ordinance and the same is invalid, illegal, null and void."

The charging part of said complaint, after reciting the circumstances of the sale of certain two quarts of wine, is as follows: "Which said selling and furnishing as aforesaid was then and there in violation of 'An ordinance for police regulation relating to places where alcoholic liquors are sold, stored, delivered, kept, served, disposed of, or distributed or given away within the county of Stanislaus, state of California, making unlawful the selling, storage, delivery, possession, disposal, distribution, or giving away of such liquors (with certain exceptions), within such portions of the county of Stanislaus as are subject to the police powers of said county, providing a penalty for the violation thereof, and repealing all ordinances or parts of ordinances in conflict herewith.' Said ordinance enacted by a vote of the people of the county of Stanislaus on the 14th day of May, 1912, which said ordinance went into effect on the 31st day of May, 1912, said claret wine then and there being an alcoholic liquor."

The title and enacting clause of the said ordinance are as follows: "An ordinance for police regulation relating to places where alcoholic liquors are sold, stored, delivered, kept, served, disposed of, or distributed or given away within the county of Stanislaus, state of California; making unlawful the selling, storage, delivery, possesion, disposal, distribution, or giving away of such liquors (with certain exceptions) within such portions of the county of Stanislaus as are subject to the police powers of said county, providing a penalty for the violation thereof and repealing all ordinances or parts of ordinances in conflict herewith. The people of the county of Stanislaus (state of California), do ordain as follows:" Section 1 of the ordinance, as shown by petitioner's exhibit "B," is as follows: "That it shall be unlawful for any person . . . within such portions of the county of Stanislaus, state of California, as (are) subject to the police powers of said county, to sell . . . any alcoholic liquors, except as hereinafter provided." Section 7 reads as follows: "Any person violating any of the terms or provisions of this ordinance or failing to observe and perform any of the requirements hereof shall be guilty of a misdemeanor thereunder and upon conviction thereof shall be fined not more than five hundred dollars or

be imprisoned in the county jail not more than six months or be punished by both such fine and imprisonment.'' Section 12 reads as follows: ''This ordinance shall go into effect from and after ten days after its adoption.'' Following this section is the following: ''Be it further resolved that said election shall be held at the same polling places, in the same precincts and conducted by the same election officers as have been appointed for the May presidential primary election to be held on Tuesday, the 14th day of May, 1912. The above resolution was adopted by the following vote of the board: M. A. Lewis —Yes. W. R. Service—Yes. J. J. McMahon—Yes. A. E. Clary—Yes. John Dunn—Yes. Thereupon the board adjourned for the term. Attest: H. Benson, Clerk. By C. C. Eastin, Jr., Deputy.''

In his return to the writ, respondent ''admits that said complaint is founded upon and charges a violation of the terms and provisions of an ordinance enacted by the people of the county of Stanislaus, state of California, on the 14th day of May, 1912, which ordinance marked exhibit B, is attached to said petition, except the last paragraph of said ordinance, beginning with 'Be it further resolved' down to and ending with 'deputy.' '' The return further shows: ''Said sheriff alleges that said ordinance, after due and legal proceedings had before the board of supervisors, said (ordinance was) submitted to a vote of the qualified electors of said county who had a right to vote at said election, on the 14th day of May, 1912. That at said election a majority, who had a right and were entitled to vote on said ordinance, voted in favor of the adoption of said ordinance. . . . That said ordinance went into effect from and after ten days after its adoption, and ever since has been and now is in effect in said county of Stanislaus, as provided in said ordinance.''

There are certain provisions of the constitution and statutes brought into review:

''Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.'' (Const., art. XI, sec. 11.)

The act of April 4, 1911 (Stats. 1911, p. 599), is an act entitled—''An act to provide for the regulation of the traffic in alcoholic liquors by establishing local option,'' etc. Sec-

tion 1 provides that—"Qualified electors of any city or town, or of that portion of any supervisorial district not included within the boundaries of any incorporated city or town, . . . may petition the city council, board of trustees or other legislative body of such city or town or the board of supervisors of the county in which such supervisorial district is situated, to call an election to vote upon the question, whether the sale of alcoholic liquors shall be licensed in such city, town, or supervisorial district outside of incorporated cities and towns." The sections following comprise complete directions for carrying out the objects of the statute. Section 13 declares that—"It shall be unlawful for any person . . . within the boundaries of any no-license territory to sell . . . any alcoholic liquors except as provided in section 16 hereof." Section 19 declares that the violation of the statute shall be deemed a misdemeanor punishable "by a fine not exceeding six hundred dollars, or by imprisonment in the county jail not exceeding seven months, or by both such fine and imprisonment." Section 22 reads: "Nothing in this act shall be construed as putting any limitations, except such as are positively stated herein, upon the police powers now possessed by cities, towns and counties."

The act of January 2, 1912, is entitled—"An act to amend section 4058 of the Political Code, relating to direct legislation and including initiative and referendum by electors of counties." (Stats. 1912, p. 125.) The amended section 4058 was originally enacted as a new section to the Political Code, April 3, 1911 (Stats. 1911, p. 577), and the act was entitled "An act to provide for direct legislation, including initiative, referendum, and recall by electors in counties, by adding two new sections to the Political Code, to be numbered sections 4058 and 4021a, respectively." Section 4021a provides that "the holder of any elective office of any county may be removed or recalled at any time by the electors; provided he has held his office at least six months," and provides the procedure for such removal. Section 4058, as it now reads, provides as follows: "Ordinances may also be enacted by and for any county of the state in the manner following:" Then follow provisions by which "qualified electors of the county," in number as prescribed, may by petition submit to the board of supervisors any proposed ordinance. "If the petition ac-

companying the proposed ordinance be signed by electors not less in number than twenty per cent of the entire vote cast within such county for all candidates for governor of the state, at the last general election at which such governor was voted for, and contains a request that such ordinance be submitted forthwith to a vote of the people at a special election, then the board of supervisors shall either: (a) Pass such ordinance without alteration at the regular session at which it is presented and within ten days after it is presented; or, (b) Forthwith the supervisors shall proceed to call a special election at which said ordinance, without alteration, shall be submitted to a vote of the electors of the county." Then follow provisions for conducting the election not necessary to be stated. Among other things it is provided that "the enacting clause of an ordinance passed by the vote of the electors shall be substantially in the following form: 'The people of the county of .......... do ordain as follows.' " It is also provided that "if a majority of the qualified electors voting on said proposed ordinance shall vote in favor thereof, such ordinance shall thereupon become a valid and binding ordinance of the county and be considered as adopted upon the date that the vote is cast and declared by the board of supervisors and go into effect ten days thereafter."

Some significance is attempted to be given the fact that section 4058, introducing the initiative, was originally passed April 3, 1911, while the Local Option Law was passed April 4, 1911. Section 4058, with which we are now to deal, was passed January 2, 1912, and is the law governing so far as it relates to the proceedings now under review, which were initiated since that date. This we deem sufficient answer to any inference which might be drawn had section 4058 remained unamended.

Respondent says in his brief: "It has never been claimed, nor has any one contended, that it (the ordinance) was passed by the board of supervisors. It is admitted that it was passed by the vote of the people." In his return respondent alleges that the ordinance was "submitted to a vote of the qualified electors of said county who had a right to vote at said election, on the 14th day of May, 1912. That at said election a majority, who had a right and were entitled to vote on said ordinance, voted in favor of the adoption of said ordinance."

We are asked to infer from this statement that only those electors residing without the boundaries of any incorporated town or city voted at the election and that section 4058 "refers to that part of the county over which the board of supervisors had jurisdiction"; that the board has no jurisdiction over incorporated cities and towns and hence, in submitting the ordinance, the board submitted it only to electors outside such cities and towns.

The ordinance declares that—"The people of the county of Stanislaus, state of California, do ordain as follows." The act declares that "ordinances may also be enacted by and for any county of the state in the manner following." The act contemplates the enactment of ordinances by the electors of the county on the principle of the initiative and referendum. The ordinance shows on its face that it was enacted "by and for the county" in conformity with the statute and is the enactment of "the people of the county." It is perfectly clear that the ordinance was passed pursuant to section 4058 and not under the Local Option Law.

It is immaterial, in the view we take of the section, whether the electors of the entire county participated in the election or only those residing outside incorporated cities and towns. It was not an election by the districts to be affected. We have, then, the question: Is the licensing of the liquor traffic governed by the Local Option Law of 1911 or by section 4058 of the Political Code?

The act of 1911 is a general law. (*Ex parte Beck,* 162 Cal. 701, [124 Pac. 543].) As will be seen from its terms, quoted above, it provides a state wide scheme by which "any incorporated city or town, or of that portion of any supervisorial district not included within the boundaries of any incorporated city or town," may petition to the appropriate legislative body to call an election to determine "whether the sale of alcoholic liquors shall be licensed in such city, town or supervisorial district outside of incorporated cities and towns." No provision of the act authorizes any county in its entirety, either exclusive or inclusive of incorporated cities and towns, to petition any legislative body to call an election for such purpose. The obvious intention of the legislature was to authorize each of the mentioned subdivisions of the county to act independently of every other in determining the question for itself, unaffected by the votes of any other of

the subdivisions named. Hence, any ordinance passed by the people of the county or by the board of supervisors in conflict with this general law would be violative of section 11 of article XI of the constitution, and void. (*In re Desanta,* 8 Cal. App. 295, [96 Pac. 1027] ; *Ex parte Stephen,* 114 Cal. 278, [46 Pac. 86] ; *In re Sic,* 73 Cal. 142, [14 Pac. 405].) That the ordinance in question is in conflict with the act of 1911 admits of no doubt. We have an apt illustration of this fact in the recent general election as well as in numerous previous elections in counties. In several counties, proceeding under the Local Option Law, the electors of incorporated cities and towns and of supervisorial districts voted on the question whether they would license the sale of intoxicating liquors. The result was that, in the vernacular of the day, some voted "wet" and others voted "dry," so that in the same county there is now "wet" and "dry" territory. Obviously, an ordinance enacted by a county-wide vote must necessarily result in nullifying the decision of one or more districts, whichever way the county as a whole might vote, and would thus thwart the underlying principle of the act of 1911—namely, local option by districts. It is easily conceivable that the electoral vote of the entire county might be invoked at any time to accomplish this very object. It might happen that, in a county wide vote, the electors of a town or city would be able to determine the question for every other district in the county, or the combined vote outside the town or city might settle the question for the town or city. Was it the intention of the legislature to authorize this to be done by the enactment of section 4058? We cannot believe that the legislature so intended or that such an intention necessarily results from anything to be found in that section. This section, as it now reads, differs but little and in no respect affecting the present question, from the section as originally passed. It was first enacted April 3, 1911, and the Local Option Law was passed the next day, April 4, 1911. The Local Option Law relates to a specific single subject and is a carefully worked-out plan by which the people of the supervisorial subdivisions of the county and the incorporated cities and towns may license the liquor traffic. The powers given by section 4058, we think, were given, and intended to be given, the people of the entire county, to legislate by the initiative upon other subjects of general concern to the whole county. To give the section the

construction contended for would permit a county by its votes
to repeal an ordinance passed by a district of the county un-
der the Local Option Law; or it might by its vote make it im-
possible for a district to enact an ordinance on that subject
different from that enacted by the county.

The Local Option Law requires "the petition of twenty-five
per cent of the number of votes cast for all candidates for
governor of the state," i. e., twenty-five per cent of the votes
cast in the supervisorial district or in the boundaries of the
incorporated city or town. Section 4058 requires the petition
to be "signed by electors not less in number than twenty per
cent of the entire vote cast within the county . . . at the last
preceding general election at which a governor is voted for."
For the reasons suggested, and others might be added, if sec-
tion 4058 is given the construction contended for by respond-
ent, the two acts are in irreconcilable conflict and one or the
other must give way.

"Interpretation must be reasonable." (Civ. Code, sec.
3542.) "An interpretation which gives effect is preferred to
one which makes void." (Civ. Code, sec. 3541.) A statute
should be so construed as to give a sensible and intelligent
meaning to every part, to avoid absurd and unjust conse-
quences, and, if possible, so as to make it valid and effective.
(2 Sutherland on Statutory Construction, sec. 516.) The
legislation inaugurating the initiative and referendum and
recall can find ample scope for its operation by giving it a
reasonable interpretation and confining its operation to mat-
ters not elsewhere specifically provided for, and limiting its
application to subjects of general concern to the people of the
entire county over which they may properly legislate. For
example, they may vote on the question of the removal of the
county seat. (Pol. Code, sec. 3976.) The county may vote
bonds to provide funds for the construction of roads, bridges,
and highways. (Id. sec. 4088.) There are numerous powers
given the board of supervisors, as the legislative body of the
county, enumerated in section 4041 of the Political Code, some
of which would probably be held to be within the province of
the people to initiate under section 4058.

However, the view we have taken gives effect to both laws
without doing violence to either, and this we think it our duty
to do. Any other view would lead to great confusion in the

administration of the law and would inevitably bring about a repeal of ordinances in force in some of the counties and prevent their successful enactment in others.   In short, it would render the Local Option Law of little or no value.   We can find no warrant for bringing about such regrettable results.

Our attention is called to the recent decision in the case of *Giddings* v. *Board of Trustees of San Buenaventura,* 15 Cal. App. Dec. 413,* and also to section 22 of the Local Option Law, which provides that "nothing in this act shall be construed as putting any limitations, except such as are positively stated herein, upon the police powers now possessed by cities, towns and counties."   The limitations "positively stated" in the act can be none other than the powers given to the "qualified electors of any incorporated city or town, or the electors of that portion of any supervisorial district not included within the boundaries of any incorporated city or town," to petition the appropriate legislative body "to call an election to vote upon the question, whether the sale of alcoholic liquors shall be licensed in such city, town or supervisorial district outside of incorporated cities or towns."   The section simply means that the police powers of cities, towns, and counties are not limited by the act except that the question "whether the sale of alcoholic liquors shall be licensed," is a matter which the act has specifically conferred upon the incorporated cities or towns and the supervisorial districts outside such cities and towns to be acted upon by each in its separate capacity.   In other words, the county as such cannot, under its general police power, deprive the electors of incorporated cities or towns or the electors of a supervisorial district outside such cities and towns, from deciding for themselves the question confided to them by the act.   Had the legislature intended to extend the operation of the Local Option Law to counties to pass ordinances on the specific subject dealt with in the act, the legislature would have so said in section 1 where the power is given to the enumerated subdivisions of the county.   In mentioning the subdivisions of the county to which was given the power, the county as a whole was excluded.   *Expressio unius, exclusio alterius.*   We cannot impute to the legislature

---

*This case was ordered transferred to the supreme court for hearing and decision, on November 29, 1912, and on June 23, 1913, the supreme court rendered its decision approving the conclusions and opinion of the district court of appeal.

20 Cal. App.—24

the intention by section 22 to reserve to the county, by a vote of all the electors therein, the power to prevent or undo legislation which the act empowers incorporated cities and towns and supervisorial districts only to enact.

The Giddings case, above cited, does not, as respondent claims, "settle the question in the present matter." In August, 1911, the electors of San Buenaventura, under the Local Option Law, voted in favor of licensing the sale of alcoholic liquors and the board of trustees passed an ordinance accordingly. On April 1, 1912, a petition by electors of the city was presented to the board, requesting it either to enact the accompanying ordinance, prohibiting the traffic in alcoholic liquors in said city, or submit the question to a vote of the electors of the city. The petition was presented under the provisions of the act of January 2, 1912 (Stats. 1912, p. 131), which gives to incorporated cities and towns the initiative and referendum as does the act of the same date to counties. The board refused to comply with the petition "upon the theory that under the Local Option Act the people at a popular election once determined the question and under the provisions of such act a second election should not be called until after the lapse of two years." But the court held that this Local Option Law "only purports to wrest from such board of trustees the power to grant licenses after the electors shall have determined not to make such city 'no-license territory.' " Said the court: "It does not interfere with their power, in the event no election has been held under the act, nor where one has been held and the electors have determined not to make such city 'no-license territory.' " The writ of mandate was issued for the reason that the ordinance enacted in April, 1911, was not such expression as was prohibited by the act from being resubmitted. Had the vote been in favor of "no-license territory" the opinion shows, by implication, that the Local Option Act would have prevented its resubmission until after the lapse of two years. The court said that the question of the repeal by implication of the Local Option Law by virtue of the Initiative Act was not involved. Indeed, that act was not involved except that under it the board of trustees were asked to do what it had the undoubted right to do under its general police powers with which its action in April, 1911, in no wise interfered. The Initiative Act gave

the electors the right to compel action on the question submitted, but the right or power to act on the particular subject did not come from the Initiative Act; that power was already lodged in the board.

Respondent concedes that *habeas corpus* will lie to test the constitutionality of an ordinance but he contends that "the rule should be that the constitutionality of a law or ordinance should only be considered after a conviction or after the judgment in the lower court." Why should the liberty of a citizen be taken from him and he be put to the expense and ignominy of a criminal prosecution upon a complaint having no warrant of law to support it? A void law is no law and a prosecution under it is a prosecution without the authority of law. But the rule is otherwise. (Pen. Code, sec. 1487; *Ex parte Keeney,* 84 Cal. 304, [24 Pac. 34]; *In re Smith,* 143 Cal. 368, [77 Pac. 180].)

The prisoner must be discharged and it is so ordered.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 13, 1913 on the sole ground that the supreme court had no power to transfer to itself for further hearing a proceeding in *habeas corpus* instituted and determined in the district court of apeal.

Shaw, J., dissented from the order denying a hearing by the supreme court. The opinion of the supreme court rendered in this connection is reported in 164 Cal. 724, [130 Pac. 710.]