[No. 20308.   In Bank.— July 14, 1887.]

IN THE MATTER OF SIC, ON HABEAS CORPUS.

MUNICIPAL CORPORATION — ORDINANCE PUNISHING ACTS PUNISHABLE BY GENERAL LAW — CONSTITUTIONAL LAW. — A municipal corporation has no power, under section 11 of article 11 of the constitution, to pass an' ordinance punishing precisely the same acts which are punishable under the general laws of the state.

ID. — ORDINANCE PROHIBITING OPIUM-SMOKING. — Section 3 of ordinance 192 of the city of Stockton, prohibiting two or more persons from assembling, being, or remaining in any room or place for the purpose of smoking opium, or inhaling the fumes thereof, punishes precisely the same acts as are punishable under section 307 of the Penal Code; the section of the ordinance is therefore in conflict with the general law and void.

APPLICATION for a writ of *habeas corpus.*   The facts are stated in the opinion of the court.

*Lyman I. Mowry,* for Petitioner.

The section of the ordinance is void as being in conflict with general law. (Const., art. 11, sec. 11; Pen. Code, sec. 307; *Mayor etc.* v. *Hussey,* 21 Ga. 80; *In re Lee Tong,* 9 Saw. 333; *Slaughter* v. *People,* 2 Doug. 334; *City Council of Indianapolis* v. *Blythe,* 2 Ind. 75; *City of Madison* v. *Hatcher,* 8 Blackf. 341; *New Orleans* v. *Miller,* 7 La. Ann. 651; *Municipality* v. *Wilson,* 5 La. Ann. 747; 1 Dillon's Mun. Corp., 3d ed., secs. 366 et seq.)

*F. H. Smith,* for Respondent.

The section of the ordinance, conceding it to provide for the same offense as section 307 of the Penal Code, is not in conflict therewith, and therefore is not void. (Cooley's Const. Lim. 199; *Rogers* v. *Jones,* 1 Wend. 261; S. C., 19 Am. Dec. 493; *Mayor etc. of Mobile* v. *Allaire,* 14 Ala. 400; *People* v. *Stevens,* 13 Wend. 341; *Amboy* v. *Sleeper,* 31 Ill. 499; *State* v. *Crummey,* 17 Minn. 72; *State* v. *Oleson,* 26 Minn. 507; *Greenwood* v. *State,* 32 Am. Rep. 539; *State* v. *Gordon,* 60 Mo. 383; *Lawrenceburg* v. *Wuest,* 16 Ind. 337; *Brownville, City of,* v. *Cook,* 4 Neb. 101; *Bloomfield, Town of,* v. *Trimble,* 54 Iowa, 399; *Chicago Packing Co.* v. *Chicago,* 88 Ill. 221.)

TEMPLE, J.—A complaint was filed in the Police Court of the city of Stockton, charging Sam Lee and petitioner Sic with the crime of assembling for the purpose of smoking, as follows, to wit, the said Sam Lee and Sic (at a time and place specified) were willfully and unlawfully in that certain room, in that certain building on the southeast corner of El Dorado and Washington streets, in said city, for the purpose of smoking opium, contrary to the provisions of a certain ordinance, etc.

The ordinance was entitled "Ordinance No. 192. To prohibit and prevent the smoking of opium, and the inhaling of fumes of opium."

The first section declared the smoking of opium or the inhaling of the fumes of opium injurious to public health, contrary to public morals, and against the peace and good order of the city, and prohibits the keeping of places where persons assemble for the purpose of smoking or inhaling the fumes of opium. Section 2 makes it unlawful for persons keeping certain places of resort to allow persons to smoke or inhale the fumes of opium therein.

Section 3 is the one under which this complaint is lodged, and is as follows:—

"Sec. 3. It shall be unlawful for two or more persons to assemble, be, or remain in any room or place for the purpose of smoking opium or inhaling the fumes thereof."

Section 4 makes it unlawful for any one to knowingly remain in the room or place where the offense is committed.

Section 5 is aimed at the person owning or controlling any building who permits the offense therein.

Section 6 punishes those who aid or abet the offense.

Section 7 punishes one who may stand before, upon, or in the vicinity of the building, room, or place where the offense is committed to give warning of the approach of any person.

It is claimed that this ordinance is void because it conflicts with section 307 of the Penal Code, which is as follows:—

"Every person who opens or maintains, to be resorted to by other persons, any place where opium, or any of its preparations, is sold or given away, to be smoked at such place, and any person who at such place sells or gives away any opium, or its said preparations, to be there smoked or otherwise used, and every person who visits or resorts to any such place for the purpose of smoking opium, or its said preparations, is guilty of a misdemeanor, and upon conviction thereof shall be punished

by a fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

Section 3 of the ordinance is broad enough in terms to prohibit opium-smoking under all circumstances, except when the person "keeps moving." Persons may not assemble at any place for the purpose of smoking, or be at a place for the purpose, or remain at a place to smoke. The other sections of the ordinance are equally marked in this respect. They are all aimed at rooms or places where opium is smoked or inhaled. In short, the ordinance is evidently intended to prohibit opium dens or places of resort for the purpose of smoking opium. The ordinance, notwithstanding the comprehensive language used, would hardly be given a more extensive effect than that. To prohibit vice is not ordinarily considered within the police power of the state. A crime is a trespass upon some right, public or private. The object of the police power is to protect rights from the assaults of others, not to banish sin from the world or to make men moral. It is true no one becomes vicious or degraded without indirectly injuring others, but these consequences are not direct or immediate. *In jure non remota sed proxima spectatur.*

Thus it is said it is no crime to be idle, but one may be punished for begging, for that interferes directly with the comfort of others; that it should not be made a legal wrong for one to become intoxicated in the privacy of his room, if he does not offend others by displaying his drunkenness. Yet the consequence of each of these vices may be to inflict great injuries upon others.

Possibly this resulting injury to others and to society may justify the legislature in declaring these vices to be crimes. We are not required to pass upon that question, and we do not. It is enough to say that such legislation is very rare in this country. There seems to be an instinctive and universal feeling that this is a danger-

ous province to enter upon, and that through such laws individual liberty might be very much abridged. Hence laws to suppress intemperance prohibit the sale of liquor, suppress places of resort where it is drank, and punish offensive exhibitions of drunken people, but do not punish the immoderate use of spirits.

Since this whole ordinance, therefore, is evidently aimed at places of resort where opium is smoked or inhaled, we feel justified in limiting section 3 to that evil, although the natural and usual import of such words might, in the absence of a strong presumption against it, extend its effect much further.

Perhaps it would be enough to say that the offense charged in the complaint, of which respondent was convicted, may be, for aught that appears, the same as that prohibited in the code.

The section plainly covers the same ground as the Penal Code. It was probably intended to cover some supposed defects in the Penal Code, still it denounces as criminal precisely the same acts which are attempted to be prohibited by the code. It is admitted that no ordinance is valid which conflicts with the general laws of this state. Does section 3 of the ordinance conflict with section 307 of the Penal Code?

Upon this subject there is a very great conflict of authority. Judge Cooley says that although the decisions are not uniform, the clear weight of authority is that the same act may constitute an offense both against the state and the municipal corporation, and both may punish it without violation of any constitutional principle. (Constitutional Limitations, 199.)

In Bishop on Statutory Crimes it is said (section 24) that the true rule is: "If the statute so authorizes, it is not apparent why a city corporation may not impose a special penalty for an act done against it while the state imposes also a penalty for the same act done against the state. This implies that to enable the city to pass such an ordinance,—that is, one imposing a penalty for an

act already prohibited by the general law, — special authority must be found in the charter."

In Dillon on Municipal Corporations, section 68, after noticing the great conflict in the authorities, the following rules are laid down, it is said, with some distrust as to their correctness:—

"1. A general grant of power, such as mere authority to make by-laws for the good government of the place, and the like, should not be held to confer authority upon the corporation to make an ordinance punishing an act — for example, as assault and battery — which is made punishable as a criminal offense by the laws of the state. . . . .

"2. Where the act is in its nature one which constitutes two offenses, one against the state and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offense under the state law; but the legislative intention that this may be done should be manifest and unmistakable, or the power in the corporation should be held not to exist.

"3. Where the act or matter covered by the charter or ordinance and by the state law is not essentially criminal in its nature, and is one which is generally confined to the supervision and control of the local government of cities and towns, but is also of a nature to require general legislation, the intention that the municipal government should have power to make new, further, and more definite regulations, and enforce them by appropriate penalties, will be inferred from language which would not be sufficient were the matter one not specially relating to corporate duties and fully provided for in general laws."

The decisions on this question are so very conflicting that they present no obstacle to our considering it as a new one, and these rules perhaps express the law as we understand it, as well as any.

Section 11, article 11, of the constitution, authorizes cities and towns "to pass and enforce within their limits such local police, sanitary, and other regulations as do not conflict with general laws." The last clause of this section must be held to be a limitation upon the power of municipalities, whether that power is derived under this provision of the constitution or from the charter. If, as is held both by Bishop and Dillon to be the effect of authorities, a municipality can only pass ordinances punishing the same acts which are punishable under general laws, when expressly authorized to do so, and that no authority to pass such laws will be presumed from grants of power general in their character, it must be because that such ordinances may supersede the general law upon the subject. Here there is not only no such authority, but if such ordinances are conflicting, there cannot be such authority.

It would seem that an ordinance must be conflicting with the general law which may operate to prevent a prosecution of the offense under the general law. The constitution provides that no one shall be twice put in jeopardy for the same offense. If tried and convicted or acquitted under the ordinance, he could not be again tried for the same offense under the general law. The contrary doctrine has been held in some states, but this conclusion seems more in consonance with reason and justice. Some of these decisions apply to acts which are said to be of a dual nature, and offend at once against the general law and police regulations, which are not directed specifically at the offense denounced in the general law. If there be such acts, no question of this kind can arise with reference to them. But there are decisions no doubt which hold squarely the doctrine that both may punish for the same offense. In Alabama it was said (*Mayor* v. *Allair*, 14 Ala. 400), that assault and battery could be punished under the ordinance and under the state law also,—the one to maintain the peace

of the state, and the other the peace of the city. It is difficult to see how the peace of the state is disturbed, except through the disturbance in the city. The case has been said to be like that where the state punishes for an offense against its laws, and the same act is punishable under the laws of the United States. It was said by Mr. Justice Grier that the citizen may be said to owe allegiance to two sovereigns, and the same act may be an offense against each. The United States, however, has no general criminal jurisdiction. In these cases where the same act may be punished as criminal under such jurisdiction, it will be found that the act, beside offending the general law of the state, is an assault upon the United States in some of its functions as a government. Thus counterfeiting is an injury to the people, for they are likely to be cheated and swindled through it. But the United States finds it necessary to punish the same act, not because of the injury to the people, but to protect itself in its function of coining money and regulating the currency. State laws and city ordinances all rest upon the same ultimate authority,—the people of the state, — and they aim at the same evil. But it is said that even in cases where a person is punishable under both state and federal laws the actual practice is to punish but once.

Holding these views, we think the respondent must be discharged. It will be observed that we only hold that there is a conflict where the ordinance and the general law punish precisely the same acts. We do not wish to be understood as holding that the sections of the ordinance which make criminal other acts not punishable under the general law are void because the legislature has seen fit to legislate upon the same subject.

The petitioner is hereby discharged.

McFARLAND, J., and SEARLS, C. J., concurred.

PATERSON, J., concurring.— I concur in the judgment. I cannot agree with Mr. Justice Temple, however, in his construction of the ordinance. It is not only intended to cover cases not provided for by section 307 of the Penal Code, but it accomplishes that end. Thus section 6 provides: " It shall be unlawful for any person to aid and abet or assist another person in the smoking of opium, or inhaling the fumes of opium." This provision has no reference to the place where the smoking is done; and section 3, under which the petitioners were convicted, is aimed more at the act of smoking than at the place where it is indulged in. I think, therefore, that the question must be met and answered in this case, whether the city council has unlimited power to prohibit the smoking of opium under all circumstances. The provisions of section 3 of the ordinance upon which the complaint was made are general, universal in their operation, and present the issue squarely. Will they support a conviction? I feel bound to answer this question in the negative. However much we might prefer a different conclusion in this particular case, there are certain great principles which cannot be invaded in special cases without trespassing upon that province which Mr. Justice Temple speaks of as being dangerous to enter by legislation. Every man has the right to eat, drink, and smoke what he pleases in his own house without police interference (unless he is trying to kill himself); and before the state or municipal authorities should ask the conviction of a person for smoking, eating, or drinking any particular thing, facts ought to be alleged and shown —even in cases of opium-smoking—that at least it was not done in the privacy of his own house, or that he was using his house as a resort for others, or that he was in some way aiding, encouraging, or abetting others in the use of the drug,— injuring or jeopardizing the rights of others; or in a word, that he was offending against the welfare of society in some way, beyond merely the inju-

rious effect of the act upon himself alone.   That some of
the sections of the ordinance are valid, and that section
3 of the ordinance can be so amended as to provide law-
fully for conviction in the cases which it was intended to
cover, I have no doubt.

It is unnecessary to say, in this case, how far the local
authorities may go in their legislation against gambling-
houses or saloons.   The legislature has recognized the
opium habit as a great evil.   It has by general legisla-
tion attempted to suppress it.   Section 307 was passed
and approved for that purpose.   By an act entitled "An
act to regulate the sale of certain poisonous substances,"
approved April 16, 1880, it was made a misdemeanor,
punishable by a fine not exceeding five hundred dollars,
or by imprisonment in the county jail not exceeding six
months, or by both such fine and imprisonment, for any
person other than a physician authorized to practice
medicine under the laws of this state to retail opium
without distinctly labeling the box or package, and the
wrapper or cover thereof, together with the word "poison,"
and the name and place of business of the seller; and
the act further provided: "Nor shall it be lawful for any
person to retail any of the substances enumerated in
either of said schedules to any person, unless upon due
inquiry it is found that the person receiving the same is
aware of its poisonous character, *and that it is to be used
for a legitimate purpose.*"   Section 2 of the act requires
the seller to keep a book in which shall be entered the
date of sale, name of the purchaser, quantity sold, pur-
pose for which the purchaser stated it was required, etc.,
and that the book should be always open to inspection
by the proper authorities.   But all this legislation has
failed to meet the exigency of affairs, and unless we close
our eyes to what is taking place daily in the larger cities
of the state, and becoming a part of our most deplorable
police history, we must recognize the fact that those who
are engaged in this nefarious traffic — especially that

class who seek among the youth of both sexes for victims of the drug — are the most insidious enemies of society. For the purpose of shielding themselves and their enslaved and unhappy customers from arrest and punishment for violation of the law, they secrete themselves and their "outfits" in deserted buildings, under bridges, and in out-of-the-way places; thus planning in advance of arrest that which will be a defense under section 307, viz., that they were not caught in a place which was opened *to be resorted to by others, and where opium is sold or given away.*

They sell the opium at one place, lease their smoking outfits to be used at another place, and keep constantly moving about with transitory "joints," thus eluding the police and evading the operation of the statute. These are matters of common notoriety. A resort being "a place of frequent assembly, a haunt" (Webster), before a conviction can be secured under section 307, it must be shown that the place where the smoking was done was opened or maintained to enable opium-smokers to frequent the same for the purpose of smoking. But it is not for us to say what municipal legislation should or may be provided. What I have said is intended only in support of other provisions of the ordinance which, though different from or the same as the state law, are, in my opinion, valid, notwithstanding the invalidity of section 3.