[Crim. No. 2839. In Bank.—November 8, 1926.]

In the Matter of the Application of ALFRED IVERSON for a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—CITY OF LOS ANGELES—POLICE POWER —REGULATION OF PRESCRIPTIONS FOR INTOXICATING LIQUOR. — A city has the power, under section 11 of article XI of the constitution, to enact police regulations and ordinances promoting considerations of public welfare, public morals, public health and public safety, provided such regulations and municipal by-laws

---

1. See 18 Cal. Jur. 819.

are not in conflict with general laws; and the city of Los Angeles has constitutional and charter power to enact an ordinance regulating the filling by pharmacies of prescriptions for intoxicating liquor, if its provisions are not in conflict with the state law.

[2] ID.—LIQUOR REGULATIONS—CONSISTENCY OF MUNICIPAL AND STATE REGULATIONS.—By the passage of the Wright Act the state has not entered and covered the entire field of liquor regulation and prohibition to the extent that a municipal ordinance limiting prescriptions of intoxicating liquor to a quantity less than that permitted by the former act constitutes an attempt to invade the same field and is therefore void.

[3] ID.—INHIBITION OF LOCAL LEGISLATION—METHOD OF.—The only way the state legislature can inhibit local legislative bodies from enacting rules and police regulations is by the state itself occupying the same legislative field so completely that legislation on the subject by local legislative bodies will necessarily be inconsistent with the state act.

[4] ID.—RIGHT OF MUNICIPALITY TO LEGISLATE.—Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purposes of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable.

[5] ID.—EXCLUSIVE OCCUPATION OF FIELD—DETERMINATION OF.—Whether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it is intended to operate.

[6] ID.—REGULATION OF PRESCRIPTIONS FOR INTOXICATING LIQUOR—VALID ORDINANCE.—A municipal ordinance making it unlawful to sell, serve or give away any alcoholic liquor within the city except as in the ordinance provided, but permitting the filling at pharmacies of prescriptions calling for not to exceed eight ounces of alcoholic liquor each is not in conflict with the Wright Act which provides that prescriptions calling for intoxicating liquor may be filled in quantities not exceeding sixteen ounces.

---

2. See 14 Cal. Jur. 732.
3. See 18 Cal. Jur. 831; 19 R. C. L. 803.
4. See 18 Cal. Jur. 832; 19 R. C. L. 804.
5. See 18 Cal. Jur. 833.
6. See 14 Cal. Jur. 732.

[7] ID. — WRIGHT ACT — CONSTRUCTION OF. — The state prohibition Law shows no express or implied intention on the part of the legislature to occupy the entire field of prohibition legislation, or the regulation of traffic in intoxicating liquors, nor to repeal any ordinance in existence at the time of its adoption, and it provides that nothing in the act shall be construed as limiting the power of any city or county or city and county to prohibit the manufacture, sale, transportation or possession of intoxicating liquors for beverage purposes.

[8] ID.—POWER TO PROHIBIT.—The power to prohibit the sale of intoxicating liquors includes the power and right to regulate by the imposition of conditions and restrictions.

[9] ID.—REGULATION OF PRESCRIPTIONS—CONSTRUCTION OF VOLSTEAD ACT.—The detailed regulations for the issuance of prescriptions for alcoholic liquor contained in the Volstead Act, and included by adoption in the state statute, do not exclude by their comprehensiveness the possibility of local regulation.

[10] ID. — STATE AND LOCAL REGULATIONS — DIFFERENT PENALTIES — VALIDITY OF.—The fact that a municipal ordinance authorizes the court to impose more severe penalties than are permitted under the state prohibition act does not render it unreasonable and void, where the regulatory provisions of the ordinance differ from those in the state law.

---

(1) 33 C. J., p. 521, n. 99, p. 524, n. 14 New; 28 Cyc., p. 693, n. 69, p. 701, n. 11. (2) 33 C. J., p. 528, n. 53; 28 Cyc., p. 693, n. 69. (3) 28 Cyc., p. 696, n. 96, p. 701, n. 15. (4) 28 Cyc., p. 701, n. 15. (5) 28 Cyc., p. 702, n. 19 New. (6) 33 C. J., p. 528, n. 53. (7) 33 C. J., p. 526, n. 40. (8) 33 C. J., p. 524, n. 14 New. (9) 33 C. J., p. 524, n. 14 New. (10) 33 C. J., p. 520, n. 94.

APPLICATION for a Writ of Habeas Corpus to secure the release of petitioner, convicted of violating a municipal ordinance regulating the sale of intoxicating liquor. Writ discharged and prisoner remanded.

The facts are stated in the opinion of the court.

Ray E. Nimmo, Brobeck, Phleger & Harrison, E. E. Leighton and Errol O. Shour for Petitioner.

J. M. Friedlander, City Prosecutor, and A. T. Folsom, Deputy City Prosecutor, for Respondent.

---

10. See 14 Cal. Jur. 732.

WASTE, C. J.—Alfred Iverson, in whose behalf a petition for a writ of *habeas corpus* was filed, is a regularly licensed and registered pharmacist, and at the time of his arrest, which it is alleged resulted in his unlawful detention, was employed in a retail drugstore in the city of Los Angeles. His prosecution in the police court was based upon the alleged violation of a provision in an ordinance of the city of Los Angeles, an initiative measure known as the Gandier Ordinance, adopted prior to the time the general prohibition law of the state, known as the Wright Act (Stats. 1921, p. 79), became effective. The ordinance provides that it shall be unlawful to sell, serve or give away any alcoholic liquor within the city of Los Angeles except as in the ordinance provided, and permits the filling at pharmacies, on the date of issuance, of prescriptions calling for not to exceed eight ounces of alcoholic liquor each. Iverson was prosecuted and imprisoned for violating this provision.

For the purposes of this hearing the facts are not disputed but it is urged on behalf of the petitioner that the police court was without jurisdiction for the reason that the complaint states no public offense and that the ordinance under which the charge was made is in conflict with the state prohibition act, which provides that prescriptions calling for intoxicating liquor may be filled in quantities not exceeding sixteen ounces. The single question at issue is whether or not the provisions of the Gandier Ordinance are in conflict with the Wright Act, which has adopted the penal and prohibitory features of the national prohibition law.

[1] It is not denied by petitioner that the city of Los Angeles has the power, under section 11 of article XI of the constitution, to enact police regulations and ordinances promoting considerations of public welfare, public morals, public health and public safety, provided that such regulations and municipal by-laws are not in conflict with general laws. It is also admitted that the city has constitutional and charter power to enact such a by-law as the Gandier Ordinance if its provisions are not in conflict with the state law.

[2] The first contention made by the petitioner is that the state has entered and covered the entire field of liquor regulation and prohibition by the enactment of the general prohibition law, and that the ordinance limiting prescrip-

tions of intoxicating liquor to a quantity less than that permitted by the Wright Act is an attempt to invade the same field, and is void. Municipalities derive their authority from the constitution. [3] The only way the legislature can inhibit local legislative bodies from enacting rules and police regulations is by the state itself occupying the same legislative field so completely that legislation on the subject by local legislative bodies will necessarily be inconsistent with the state act. It does not follow that because the legislature has seen fit to make certain general rules applicable in all the cities and elsewhere in the state it has thereby impliedly prohibited the enactment of additional local regulations by municipalities in keeping with the purpose of the general law. So long as the requirements of the municipal ordinance are not in themselves pernicious, as being unreasonable or discriminatory, both may stand. There may be different regulations without a conflict. (*Ex parte John*, 17 Cal. App. 58 [118 Pac. 722]; *Ex parte Hong Shen*, 98 Cal. 681, 684 [33 Pac. 799]; *In re Murphy*, 128 Cal. 29 [60 Pac. 465]; *In re Hoffman*, 155 Cal. 114, 117 [132 Am. St. Rep. 75, 99 Pac. 517].) [4] Where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipality with subordinate power to act in the matter may make such new and additional regulations in aid and furtherance of the purposes of the general law as may seem fit and appropriate to the necessities of the particular locality and which are not in themselves unreasonable. (*Mann* v. *Scott*, 180 Cal. 550, 556 [182 Pac. 281].) Petitioner has cited *In re Sic*, 73 Cal. 142 [14 Pac. 405], and *In re Mingo*, 190 Cal. 769, 771 [214 Pac. 850], as holding that a municipality has no power, under section 11 of article XI of the constitution, to pass an ordinance punishing precisely the same acts which are punishable under the general laws of the state. It must be noted, however, that in the Sic case the court made it plain (p. 149) that it did not wish to be understood as holding that provisions of an ordinance which makes criminal other acts not punishable under the general law of the state are void because the legislature has seen fit to legislate upon the same subject. [5] Whether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute and of the facts and circumstances

upon which it was intended to . operate. (*Mann* v. *Scott,* *supra,* p. 557.) [6] A comparison of the provisions of the Gandier Ordinance with the provisions of the Wright Act discloses that while both deal with the same general subject, to wit, the regulation of traffic in intoxicating liquors—a subject which lies within the police power of both the municipality and the state—the section of the ordinance here under attack is but another, a different, and a more stringent regulation relating to one phase of the question dealt with in the state law. If the city of Los Angeles had provided in the Gandier Ordinance that prescriptions for intoxicating liquor might be filled in a larger quantity than that permitted by the state law, there would be presented a plain case of conflict. The municipality would thereby be endeavoring to legalize that which the state had declared to be unlawful. What the ordinance in fact does is to impose limitations on the manner in which prescriptions may be filled, different and more stringent than those imposed by the subsequently enacted state prohibition law. They are not in themselves unreasonable or discriminatory, and do not, therefore, conflict with the general law. (*In re Hoffman, supra; Mann* v. *Scott, supra.*)

Petitioner places great emphasis upon the decision in *Ex parte Daniels,* 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442], and relies upon it to sustain the contention that the Wright Act covers the entire field of liquor regulation and prohibition in the state of California. There is a marked distinction between the Motor Vehicle Act and the state prohibition law. The former provides that one traveling the highway shall not travel at an unsafe rate of speed, and in no case in excess of a certain maximum, and, also, that no other limitation shall be put upon him. For the reason that the Motor Vehicle Act expressly prohibits municipalities from fixing as a maximum a lesser rate of speed than that fixed by the act, and provides that the limitations as to the rate of speed therein fixed shall be exclusive of all other limitations, the court held that the conclusion must follow that it was clearly the intention of the legislature to declare that the limitation upon the speed fixed in the law should be the only limitation controlling the conduct of the driver of a motor vehicle upon the streets and highways of the state, and that it could not be doubted that the legislature had intended

to occupy the whole field of traffic regulation. But the court also said (p. 645): "If the Legislature had merely fixed the maximum speed limit, it is clear that local legislation fixing a lesser speed limit would not be in conflict therewith, but would be merely an additional regulation." (Citing cases.)

[7] The state prohibition law provides a maximum alcoholic content which shall not be exceeded in the filling of prescriptions by licensed pharmacists. There is not to be found in the provisions of the act any express or implied intention on the part of the legislature to occupy the entire field of prohibition legislation, or the regulation of traffic · in intoxicating liquors. There is nothing in the act from which an intention can be inferred to repeal by implication any ordinance in existence at the time of its adoption. After declaring (sec. 2) that all acts or omissions prohibited or declared unlawful by the eighteenth amendment to the constitution of the United States, or by the Volstead Act, are prohibited and declared unlawful, and subject to the penalties provided in the Volstead Act, the Wright Act (sec. 4) provides that nothing in the "act shall be construed as limiting the power of any city or county or city and county to prohibit the manufacture, sale, transportation or possession of intoxicating liquors for beverage purposes."

[8] The power to prohibit the sale of intoxicating liquor includes the power and right to regulate by the imposition of conditions and restrictions. (*McRae* v. *Pine,* 25 Cal. App. 594, 598 [144 Pac. 983].) In *In re Mingo, supra,* the court held that the provision of the Wright Act (*supra*) does not purport to grant to counties any power which they did not already possess. That is, of course, a proper construction, for when the state law and a local ordinance are in conflict the situation is not changed by a legislative declaration that the act shall be construed as though there were no conflict. But when we keep in mind the purpose and intent of the legislature and of the people in enacting the general state prohibition law, and the wide extent of the police power residing in both the state and municipalities in the regulation of the traffic in intoxicating liquor, we are of the view that the legislative declaration should be regarded as an indication that the state did not intend to occupy the entire field, but to recognize and to reserve to the local subdivisions

of the state the power to legislate upon the same subject, within the constitutional limitation, of course, that local regulation shall not conflict with the general law.

A situation somewhat similar to that presented here was occasioned by the passage of an initiative prohibition measure in the state of Washington. It was urged that a city ordinance relating to the issuance by physicians of prescriptions for intoxicating liquors was invalid for the reason that the state, by the passage of the initiative measure, had expressed an intention of removing the subject of intoxicating liquors from the control of municipalities. The court said: "The fact that there is state legislation relating to the sale of intoxicating liquor does not deprive the city of the power to legislate upon the same subject so long as the city ordinance does not conflict with the general laws of the state, unless the state act should show, upon its face, that it was intended to be exclusive." (*Seattle* v. *Heweston*, 95 Wash. 612, 616 [164 Pac. 234]; see, also, *Seattle* v. *Brookins*, 98 Wash. 290, 292 [167 Pac. 940].)

[9] Petitioner contends that the detailed regulations for the issuance of prescriptions for alcoholic liquor contained in the Volstead Act and included by adoption in the state statute exclude by their comprehensiveness the possibility of local regulation. As the entire field was not occupied by the state, to the exclusion of local legislation, the regulations provided by the ordinance, not being unreasonable or discriminatory, must be held to apply to prescriptions filled under the provisions of the local law. The further contention of petitioner, that the municipality cannot lawfully forbid what the state law has expressly permitted to be done, is completely answered by the decision in *In re Hoffman, supra*. We do not think it can be seriously contended that, because the state has passed a law allowing intoxicating liquor to be prescribed in certain quantities, a municipality having the constitutional and charter powers of the city of Los Angeles may not, in the clear exercise of its police power, still further restrict the amount which may thus be sold. Both the statute and the ordinance have appropriate relation to a purpose within the police power of the state—a purpose enjoined on the state by the eighteenth amendment to the federal constitution.

[10] The last contention of petitioner we need consider is that the Gandier Ordinance authorizes the court to impose more severe penalties than are permitted under the state prohibition act. For this additional reason, it is argued, the ordinance is not in harmony with the general law and is, therefore, unreasonable and void. A complete answer to the contention is that the regulatory provisions of the ordinance differ from those of the state law. Any violation of its provisions constitutes a misdemeanor, punishable in the same manner and to the extent provided by the general state law. (Pen. Code, sec. 19.) It is, therefore, not unreasonable. As the offense legislated against by the ordinance is not the same as the offense proscribed by the state law, there is no conflict. (*In re Hoffman, supra.*)

The writ is discharged and the petitioner is remanded to the custody of the sheriff.

Shenk, J., Richards, J., Seawell, J., Finch, J., *pro tem.,* and Curtis, J., concurred.