[Civ. No. 9118. First Appellate District, Division Two.—October 10, 1934.]

CITY OF MOUNTAIN VIEW (a Municipal Corporation), Appellant, v. SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation) et al., Respondents.

E. L. Maxwell and Kirkbride, Wilson & Brooks for Appellant.

Louis Oneal, Arthur G. Shoup, Frank Thunen, Larkin, Rathbone & Perry and Millbank, Tweed, Hope & Webb for Respondents.

NOURSE, P. J.—Plaintiff sued to condemn an easement over the right of way of defendant for the purpose of widening and extending Castro Street into a new street to be termed Moffatt Boulevard. Before the action was instituted the consent of the state Railroad Commission was requested and refused because the new boulevard contemplated a crossing of the Southern Pacific railway lines at grade. The trial court dismissed the proceeding upon the ground that such consent was a prerequisite to the construction of the crossing.

The controlling question raised on the appeal is whether an unchartered city may construct a crossing at grade over an existing railway line without having first procured the consent of the Railroad Commission.

Section 43 (a) of the Public Utilities Act (Deering's Gen. Laws, Act 6386), as amended in 1933 (Stats. 1933, p. 2227) provides in part: "No public road, highway or street shall hereafter be constructed across the track of any railroad corporation at grade, . . . without having first secured the permission of the commission; . . . The commis-

sion shall have the right to refuse its permission or to grant it upon such terms and conditions as it may prescribe.''

This statute was enacted in conformity to section 23 of article XII of the Constitution which was amended in 1911 and again in 1914, and which declared, in part, as follows: ''The railroad commission shall have and exercise such power and jurisdiction to supervise and regulate public utilities . . . as shall be conferred upon it by the legislature, and the right of the legislature to confer powers upon the railroad commission respecting public utilities is hereby declared to be plenary and to be unlimited by any provision of this Constitution.''

To emphasize the purpose of this legislation section 43 of the Public Utilities Act was amended in 1933 by the insertion of a declaration that subsection (a) was enacted as a germane and cognate part of and as an aid to the jurisdiction vested in the commission, that it involved matters of health, safety and welfare of the people of the state.

To this point we have a statute, enacted under the express authority and direction of the Constitution, designed for the protection of the safety and welfare of the general public, and declaring that no such crossing as that contemplated in this proceeding should be constructed without the permission of the Railroad Commission. No point is made that the Public Utilities Act is not a valid enactment, nor that the provisions of section 43 do not fully cover situations such as that presented in this proceeding.

But the appellant contends that there is an exception. It says that because it has not voted to relinquish to the Railroad Commission its power of control over public utilities the commission is without jurisdiction over the subject matter. This point rests on the language of section 23 of article XII of the Constitution, which provides that all powers respecting public utilities vested in the governing bodies of counties, cities and towns shall cease so far as they conflict with powers conferred on the Railroad Commission by the legislature, but with the proviso that any city may vote to retain such powers of control over public utilities as relate to local, police, sanitary and other regulations ''vested in any city and county or incorporated city or town'', and with the further proviso that until such vote is taken ''such powers shall continue unimpaired''. It is then argued by appellant that since it has not voted to

relinquish "such powers" to the Railroad Commission the commission is without jurisdiction to determine the public necessity of the improvement.

The question requires an examination of other constitutional provisions relating to the powers conferred upon cities. Section 6 of article XI permits cities to incorporate under a freeholders' charter wherein they may assume the power "to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws". The same section authorizes the legislature to provide for the incorporation of cities and towns by general laws and for this purpose the Municipal Corporations Act, with its multitude of amendments has been enacted. (Deering's Gen. Laws, Act No. 5233.) Applicable to both chartered and unchartered cities section 11 of article XI of the Constitution provides that any city "May make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

Turning to the proviso in section 23 of article XII it becomes necessary to determine at the outset what powers are "vested" in the appellant city which remain "unimpaired" because the city has not voted to relinquish them to the Railroad Commission. The word "vested" as used in this section seems to import more than a mere grant of power by general law which is subject to amendment and repeal at any time at the will of the legislature. It should be noted that the reference in this section to "vested" powers uses the same language found in section 11 of article XI of the Constitution relating to "local, police, sanitary and other regulations". The section does not refer to "municipal affairs", which is the expression used in section 6 of article XI. It is a rule too well settled to require citation of authority that in all those cities not governed by charter these local regulations are subject to and controlled by general laws. The Constitution has given to those cities only which are governed by charter under section 6 the power to make and enforce laws and regulations in respect to "municipal affairs" subject only to the restrictions provided in their several charters. Prior to the

1914 amendment of this section all chartered cities were subject to and controlled by general laws except in such municipal affairs as might have been enumerated in the charter and, in the cases involving such powers, it was frequently difficult to determine whether the provisions of the particular charter were sufficiently broad to cover the "municipal affair" involved. It was to avoid this confusion that the section was amended in 1914 containing a specified grant of such local power subject only to restrictions affirmatively placed in the charter.

Section 23 of article XII was amended in 1911. The section then contained the same provision relating to "vested" powers as is found in the 1914 amendment; but section 6 of article XI at that time vested in chartered cities only such powers over municipal affairs as were assumed in the respective charters. As to all other municipal affairs, and as to all powers derived from section 11 of the same article, such cities were controlled by general laws to the extent that no local regulation could be in conflict therewith. Viewing the section in the light of the law existing when it was adopted it must follow that the "vested" powers relating to local, police and sanitary regulations were such powers concerning purely municipal affairs as had been assumed by the several cities in their separate charters, and that, as to unchartered cities, such powers to enact such local regulations as were not in conflict with general laws. Hence, without reference to any particular provision of the Municipal Corporations Act under which the appellant finds its power to organize and to function as a municipal corporation, and without reference to any particular clause of the Highway Improvement Act (Stats. 1925, p. 849; Deering's Gen. Laws, Act No. 3276a) under which these proceedings were instituted, it is sufficient to say that all powers thus conferred upon the appellant are subject to the limitation of the paramount power of the legislature to control by general law.

The question then resolves itself into the simple inquiry whether, if there be conflict between these acts and the Public Utilities Act, which legislation should control. The answer must be obvious that, the legislature having been given plenary authority to enact the Public Utilities Act, unlimited by any other provision of the Constitution, the

provisions of that act relating to grade crossings, being special and germane to the control of the utility, must control over general provisions relating to the opening and improvement of city streets. (See, generally, *Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441, 449 [166 Pac. 351]; *City of San Bernardino* v. *Railroad Com.*, 190 Cal. 562, 566 [250 Pac. 681]; *In re Iverson*, 199 Cal. 582, 586 [250 Pac. 681]; *Pacific Tel. etc. Co.* v. *Eshleman*, 166 Cal. 640, 658 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652].)

As the appellant does not come within the limitations of section 6 of article XI of the Constitution relating to municipal affairs, the cases which have struggled with that problem do not demand comment. ▮ It is sufficient that the appellant, being controlled by general laws in municipal as well as statewide affairs, is without power to pass any local or police regulation in conflict with general laws and hence is subject to the control of the Public Utilities Act.

The reasonableness of this conclusion is emphasized by the facts appearing of record in this litigation. The city proposed the construction of the boulevard for the purpose of attracting trade from the newly established naval air base; the state, acting through the Railroad Commission, refused its permit to cross the railway lines at grade because the new boulevard would provide an attractive connection between two main motor vehicle highways; one the Bay Shore highway paralleling the railway on the east, the other the San Francisco highway paralleling the railway lines on the west. The state was thus concerned with the safety and welfare of the general public using these two highways as well as those using the railway. The city was concerned solely with the advancement of trade within its own borders. The simple statement of the controversy demands a holding that the power of regulation and control must rest with the state.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1934.