Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 2002.   May 5, 1944.]

THE PEOPLE, Appellant, v. DAVID N. COMMONS,
Respondent.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Appellant.

Charles J. Katz and Selma Mikels Bachelis for Respondent.

SHAW, P. J.—This is an appeal by the People from an order arresting judgment in a criminal case in the Municipal Court. By the terms of section 1452 of the Penal Code, a motion for such an order may be "founded on any substantial defect in the complaint." The grounds of the motion here were that the city ordinance which defendant was charged with violating was unconstitutional and void for various reasons, and that the complaint was defective in failing to negative certain exceptions contained in the ordinance.

The complaint herein alleged that the defendant, in violation of subdivision (e) of section 55.05 of an ordinance of the city of Los Angeles, commonly known as the Los Angeles Municipal Code, had "in his possession in an automobile, a dangerous and deadly weapon, towit, .38 Colt Revolver, a fire-arm capable of being concealed on the person, without then and there having a permit issued by authorized governmental authority authorizing him so to do." Section 55.05, which the defendant is thus charged with violating, begins in subdivision (a) with this definition: " 'Dangerous or deadly weapon' includes, but is not limited to: any dirk or dagger; any knife with a blade three inches or more in length, and any snap-blade or spring-blade knife, regardless of the length of the blade; any ice pick or similar sharp stabbing tool; any straight-edge razor or any razor blade fitted to a handle; any dangerous or deadly weapon within the meaning of any law of this State restricting the use thereof; and any cutting, stabbing or bludgeoning weapon or device capable of inflict-

ing grievous bodily harm; and any firearm other than (1) one carried pursuant to a valid permit, issued by a duly authorized governmental authority, or (2) an ordinary rifle or shotgun lawfully carried for purposes of hunting or other lawful sport.'' Then follow, in subdivisions (b), (c) and (d), prohibitions aimed at any person who, while carrying any such weapon concealed on his person, loafs or loiters upon any public street, hides or lurks on the premises of another, engages in any fight or disorderly conduct, or loiters about any place where intoxicating liquors are sold. Finally, subdivision (e) reads as follows: ''It shall be unlawful for any person to have in his possession, in any automobile, any dangerous or deadly weapon, but this restriction shall not be deemed to prohibit the carrying of ordinary tools or equipment carried in good faith for uses of honest work, trade or business, or for the purpose of legitimate sport or recreation.''

Defendant contends that this ordinance is unconstitutional because it is in conflict with the state law, known, though not officially designated, as the ''Dangerous Weapons' Control Law of 1923'' (Stats. 1923, p. 695, as amended; Deering's Gen. Laws, 1937 ed., Act 1970). This law makes it unlawful for any person (excepting certain law enforcement officers) to manufacture, sell or possess any blackjack, slingshot, billy, sandclub, sandbag or metal knuckles, or to carry concealed on his person any dirk or dagger, or certain explosives (§ 1), declares that no alien, no person convicted of a felony, and no narcotic addict shall own or have in his possession any pistol, revolver or other firearm capable of being concealed upon the person, that is, having a barrel less than 12 inches long (§ 2), imposes additional punishment upon persons committing felonies while armed with any weapon mentioned in section 1 (§ 3), and denies such persons probation (§ 4). It also declares that the unlawful concealed carrying of any dirk, dagger or firearm capable of being concealed upon the person is a nuisance and makes provision for destruction of weapons so carried (§ 7). Provision is also made for the issuance of licenses to carry firearms concealed (§ 8), for the registration and report of sales of firearms capable of being concealed on the person (§ 9), and for licensing dealers therein (§§ 11 and 12). Sales of firearms capable of concealment upon the person to persons forbidden to have them are also prohibited (§ 10). In thus stating the foregoing parts of the statute, we are not attempt-

ing absolute precision, or putting a definite construction upon them, but mean only to characterize them with sufficient accuracy for the purposes of the discussion following. Defendant's claim of a conflict between the ordinance and this statute is particularly based on section 5 of the statute, which, so far as important here, reads as follows: ''Except as otherwise provided in this act, it shall be unlawful for any person within this state to carry concealed upon his person or within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person without having a license to carry such firearm as hereinafter provided in section eight hereof. Any person who violates the provisions of this section shall be guilty of a misdemeanor, and if he has been convicted previously of any felony, or of any crime made punishable by this act, he is guilty of a felony.'' The portion of section 5 just quoted, insofar as it relates to vehicles, as well as persons, is limited to the *concealed* carrying of the weapons described. (*People v. Frost* (1932), 125 Cal.App.Supp. 794 [12 P.2d 1096].)

There are several modes by which a local ordinance may come into conflict with a state law. First, the ordinance may prohibit the same acts which are forbidden by the state law, in which case the ordinance is void to the extent that it duplicates the state enactment. (*In re Sic* (1887), 73 Cal. 142 [14 P. 405] ; *In re Mingo* (1923), 190 Cal. 769, 771 [214 P. 850] ; *Pipoly* v. *Benson* (1942), 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515] ; *In re Portnoy* (1942), 21 Cal.2d 237, 240 [131 P.2d 1].) It is obvious here that the provisions of subdivision (e) of section 55.05 of the Los Angeles Municipal Code, and those of section 5 of the state law, do overlap to some extent, when applied to the subject matter of this case. Both have the effect of prohibiting the concealed carrying in an automobile of revolvers such as defendant had. But the complaint here does not allege that the weapon was concealed, and hence no violation of the state law or of the part of the ordinance which overlaps and so directly conflicts with it is charged.

Second, a conflict may exist between law and ordinance because one prohibits what the other authorizes. (*Ex parte Daniels* (1920), 183 Cal. 636, 643 [192 P. 442, 21 A.L.R.

1172]; *In re Iverson* (1926), 199 Cal. 582, 587 [250 P. 681].) It is claimed that a conflict of this sort exists here because of the respective exceptions contained in law and ordinance, which are not identical. But, except as hereinafter stated, neither law nor ordinance contains any provision in any way authorizing or declaring lawful the acts which are specified in any exception thereto. As to such acts, the situation is simply that they are not prohibited by the enactment containing the exception. Consequently, a prohibition of such excepted acts contained in the other enactment does not conflict with the enactment in which the exception appears. This statement must be qualified with respect to firearms for carrying which a license is obtained under section 8 of the state law, for that law does authorize the carrying of firearms under such licenses. But the ordinance excepts from its prohibitions, by the terms of subdivision (a), above quoted, firearms ''carried pursuant to a valid permit issued by a duly authorized governmental authority.'' Hence, there is no conflict between the law and the ordinance in this matter.

■ Third, a state law may fully occupy a particular field of legislation so that there is no room for local regulation, in which case a local ordinance attempting to impose any additional regulation in that field will be regarded as conflicting with the state law, and for that reason void, even though the particular regulation set forth in the ordinance does not directly duplicate or otherwise directly conflict with any express provision of the state law. (*Pipoly* v. *Benson, supra* (1942), 20 Cal.2d 366, 371; *Natural Milk etc. Assn.* v. *San Francisco* (1942), 20 Cal.2d 101, 109 [124 P.2d 25]; *Ex parte Daniels, supra* (1920), 183 Cal. 636, 643; *In re Iverson, supra* (1926), 199 Cal. 582, 586.) ''Whether the legislature has undertaken to occupy exclusively a given field of legislation is to be determined in every case upon an analysis of the statute and of the facts and circumstances upon which it was intended to operate.'' (*In re Iverson, supra,* quoted with approval in *Natural Milk etc. Assn.* v. *San Francisco, supra,* 20 Cal.2d at p. 110.) In the present case, the state law contains no declaration, either by way of disclaimer of an intent to occupy the whole field, such as the court found in the statutes considered in *In re Iverson, supra; In re Simmons* (1926), 199 Cal. 590, 593 [250 P. 684]; and *Natural Milk etc. Assn.* v.

*San Francisco, supra,* (20 Cal.2d at p. 111), or by way of expression of such an intent, as did the statute construed in *Ex parte Daniels, supra.* The mere fact that a state law contains detailed and comprehensive regulations of a subject does not, of itself, establish the intent of the Legislature to occupy the entire field to the exclusion of local legislation. (*In re Iverson, supra,* 199 Cal. at p. 589; *In re Simmons, supra.*) This principle is implicit, though not expressly declared in *Natural Milk etc. Assn.* v. *San Francisco, supra,* where it was contended that the provisions of the state Agricultural Code regulating the sale of milk, completely occupied the field, and a city ordinance making further provision on the subject was therefore in conflict with it, but the ordinance was upheld although, as the court said, the code "contains a comprehensive plan" for regulating the sale of milk. (See, also, *In re Hoffman* (1909), 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75], for a similar situation.)

On an analysis of the state law here in question, we find no indication of an intent to occupy the whole field. It is almost wholly concerned with the carrying of weapons concealed on the person. The only weapons which it does not expressly characterize as capable of such concealment are those mentioned in sections 1 and 13, and they are such as are usually in fact capable thereof. Section 2 prohibits the carrying by some persons of firearms capable of being concealed upon the person, whether actually so concealed or not, but this prohibition is limited to classes of persons constituting but a small portion of the entire population of the state. Sections 3 and 4 seek to discourage those committing felonies from carrying certain weapons, whether concealed or not, by imposing greater punishment on them and denying them probation if they do so. But the main impact of this statute upon the general public is by section 5, to which also defendant attributes the conflict claimed to exist between law and ordinance, and that section deals only with the concealed carrying of the weapons described in it. The same is true of section 1 insofar as it relates to dirks, daggers, and certain explosive substances. Thus the state law leaves unregulated the carrying of firearms, dirks, daggers, and certain explosive substances by the general public, if they are not concealed upon the person. The act contains no provision, such as was found in *Ex parte Daniels, supra* (1920),

183 Cal. 636, 643, amounting to an affirmative permission of acts not prohibited; nor can the mere lack of a prohibition of such acts be construed as a permission thereof. (See *In re Hoffman, supra* (1909), 155 Cal. 114, 118; *In re Iverson, supra* (1926), 199 Cal. 582, 589.)

Defendant presses upon us the argument that there is need for uniform regulation of this subject throughout the state, contending that persons traveling from one part of the state to another and carrying firearms with them may be much harassed and hampered in the bearing of arms, if they may find differing local regulations in each community through which they pass, and citing *Ex parte Daniels, supra*, at page 645, where similar objections to local regulation of the speed of automobiles were mentioned. But those matters were discussed there in the consideration of the question whether the establishment of a fixed speed limit by ordinance conflicted with the state law's prohibition of any unreasonable speed, not with reference to the question whether the state law occupied the entire field, and we cannot see that they have any bearing on the latter question. But if they had, they might be countered here by the suggestion that the need for the regulation or prohibition of the carrying of deadly weapons, even though not concealed, may be much greater in large cities, where multitudes of people congregate, than in the country districts or thinly settled communities, where there is much less opportunity and temptation to commit crimes of violence for which such weapons may be used. "The state in its laws deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the state sees fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements." (*In re Hoffman, supra* (1909), 155 Cal. 114, 118.)

An ordinance may contain provisions which are invalid, either because of conflict with state law or for any other reason, and other provisions which appear to be valid, and in such case the question arises whether the good may be separated from the bad and allowed to stand. Sometimes the legislative body declares its intent, by a severability clause,

that each part of its enactment stand or fall on its own merits, regardless of the others, and considerable weight is given to such a clause (*Bacon Service Corp.* v. *Huss* (1926), 199 Cal. 21, 35 [248 P. 235]). Here we find no such legislative declaration, but even without it, "if the different parts of the statute are severable and independent of each other, and the provisions which are within the constitutional power of the legislature are capable of being carried into effect after the void part has been eliminated, and it is clear from the statute itself that it was the intent of the legislature to enact these provisions irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if these provisions were not there." (*Hale* v. *McGettigan* (1896), 114 Cal. 112, 119 [45 P. 1049], quoted with approval in *Bacon Service Co.* v. *Huss, supra,* 199 Cal. at p. 33.) "On the contrary, however, where the invalid portions of the statute are so connected with the rest of the statute as to be inseparable, it is clear that the act must fall." (*In re Portnoy, supra* (1942), 21 Cal.2d 237, 242.) ▇ Considering the ordinance in question with these rules in mind, it becomes clear that it was the intent of the legislative body—the city council— to enact the valid parts of the ordinance irrespective of the others. The intent of the council obviously was to prohibit all carrying of the described weapons, whether concealed or unconcealed, with the exceptions it stated. This prohibition is defeated, as far as concealed weapons are concerned, merely because the state law prohibits the carrying thereof. Thus such carrying is prohibited, as the council intended, but not by its own ordinance, and by the combined operation of law and ordinance substantially everything which the council intended to prohibit is prohibited. The same considerations apply to the overlapping of the statute and the ordinance as they affect the unconcealed carrying of certain weapons by the persons mentioned in section 2 of the statute. Under these circumstances, the conclusion is obvious that the council would have passed a prohibition aimed only at those matters within its legislative reach even if it had realized that a part of those it attempted to list were beyond its reach.

Neither do we see any difficulty in carrying into effect the provisions of the ordinance as applied only to those matters covered by the valid parts of the ordinance. ▇ The fact that the ordinace is so framed that its entire prohibition, in-

cluding both the valid and the invalid parts thereof, is stated by the same words, does not necessarily show that the valid part is inseparable from the invalid, as will appear from consideration of the ordinances upheld in *In re Murphy* (1900), 128 Cal. 29 [60 P. 465]; *In re Hoffman, supra* (1909), 155 Cal. 114; *In re Iverson, supra* (1926), 199 Cal. 582, and *In re Simmons, supra* (1926), 199 Cal. 590. The ordinance in the Murphy case contained a general prohibition of games of chance played for money, and was attacked on the ground that it conflicted with section 330 of the Penal Code, which prohibited certain games of the same kind. The court said, "It may be that the ordinance includes all that is denounced by the statute, and it may also be that it includes much more," and upheld the ordinance as to games not mentioned in the statute. In the Hoffman case, the ordinance prohibited the sale of milk containing less than 3.5 per cent of butter fat, while the state law prohibited the sale of milk having less than 3 per cent of butter fat. Here the words of the ordinance purported to prohibit everything prohibited by the statute, but it was declared to be an additional regulation and upheld. *In re Iverson, supra,* compared a city ordinance prohibiting the sale of more than 8 ounces of intoxicating liquor on a prescription with the provision of the Wright Act prohibiting the sale of more than 16 ounces in that manner, and *In re Simmons, supra,* confronted a city ordinance prohibiting possession of liquor containing more than one-third of 1 per cent of alcohol with the provision of the Wright Act prohibiting the possession of liquor containing more than one-half of 1 per cent of alcohol. In each case, the prohibition of the ordinance, as framed, would cover everything prohibited by the statute, and more, yet in each case the ordinance was upheld as a valid regulation of the matters not covered by the statute. On this point, defendant cites and relies on *In re Portnoy, supra* (1942), 21 Cal.2d 237, 242, where it was held that the valid parts of a section of an ordinance were "so inseparably connected" with the invalid parts that it was "impossible to sustain any part of the section." As a reason for this conclusion, the court stated: ". . . the question of a conflict between the ordinance and the Penal Code depends upon which combination of the various individuals and activities specified is involved in a particular case. Nothing less than a complete rewriting of this section could make it consistent with the provisions of

the Penal Code and accomplish its true function as supplementary legislation." But the ordinance there in question was, as the court suggests, complicated and the disentanglement of valid from invalid provisions was difficult. Here we see no such difficulty. It is necessary simply to exclude from the operation of the ordinance provisions here involved the concealed carrying of dirks, daggers and the weapons described in section 5 of the state law, any carrying of concealed firearms by the persons described in section 2 thereof and any carrying of the weapons other than dirks and daggers described in section 1. This seems to us no more difficult than the exclusions necessary to be made from the ordinances upheld in the cases above cited.

Defendant further contends that the ordinance provision in question is void because it "contains no ascertainable standard of guilt" and hence violates the Fourteenth Amendment. This attack is aimed particularly at the exceptions contained in subdivisions (a) and (e) of section 55.05, which are said to be so uncertain as to render the ordinance void. Subdivision (a) describes various weapons, each of which is classed by it as "a dangerous or deadly weapon." We cannot see in this language of description any lack of certainty. The reference to "any dangerous or deadly weapon within the meaning of any law of this state restricting the use thereof" doubtless includes the state law which we have been considering; and no other has been called to our attention to which it could refer. It is not claimed that any state law on the subject is in itself uncertain. Since "That is certain which can be made certain" (Civ. Code, § 3538), and all persons are charged with knowledge of the law (*People* v. *O'Brien* (1892), 96 Cal. 171, 176 [31 P. 45]; *Estate of Hein* (1939), 32 Cal.App.2d 438, 443 [90 P.2d 100]; see, also, 10 Cal.Jur. 760, § 72), the reference to state law (whether there be one or many such laws) for description of the weapons within the purview of the ordinance introduces no uncertainty into the latter. Nor does uncertainty result from the exception of weapons carried "pursuant to a *valid* permit issued by a *duly authorized* governmental authority." The emphasized words are those on which defendant bases his argument. He who carries a weapon may properly be held to know by what proceedings and from whom he obtained any permit he may have to carry it, and reference to the law

which, as already stated, he is bound to know, will enable him to determine whether the permit is valid and is issued by a proper authority. Had the words to which defendant objects been omitted from the ordinance, the same meaning would doubtless be given it by construction.

The exception in subdivision (a) of "an ordinary rifle or shotgun lawfully carried for purposes of hunting or other lawful sport" might perhaps have been more categorically stated, but it is sufficiently certain for legislative purposes. As in case of the words last considered, a reference to existing law will furnish a sufficient key to the meaning of "lawful" and "lawfully." Insofar as a permit or license is necessary to make the carrying lawful, what has just been said in regard to a permit is applicable here. We cannot see that the use of the word "ordinary" in the description above quoted gives it any abstruse, esoteric or extraordinary meaning or otherwise renders it uncertain. "Ordinary" signifies "according to established order; accustomed; common; . . . customary; . . . normal; . . . usual." (46 C.J. 1132; *City of Long Beach* v. *Boynton* (1911), 17 Cal.App. 290, 295 [119 P. 677].) The ordinary citizen, confronted with this ordinance, would have no insuperable difficulty in ascertaining what was an "ordinary" rifle or shotgun.

Subdivision (e) of section 55.05 excepts the carrying of "ordinary tools or equipment carried in good faith for uses of honest work, trade or business, or for the purpose of legitimate sport or recreation." This shows that the framers of the ordinance had an "honest" intent to exclude from its operation articles which, while capable of adaptation to violent and criminal purposes, would usually be carried by persons who had them and intended to use them for innocent and lawful purposes. While other words of more specific import might possibly have been found to express this intent, we do not regard those used as rendering the ordinance so vague or uncertain that it becomes void. "Legitimate," as here used, means simply "lawful" (*Corison* v. *Williams* (1922), 58 Cal.App. 282, 288 [208 P. 331]; 36 C.J. 988). The remarks already made about the word "lawful" and "ordinary" are applicable here.

Finally, the defendant contends that the complaint herein is bad because it does not negative all of the exceptions made by the ordinance. We have above set forth and discussed all of these exceptions. The complaint here expressly

negatives the first exception contained in subdivision (a), that relating to a permit, and, as defendant rightly concedes, it impliedly negatives the second exception there made, that relating to a rifle or shotgun, by its description of the weapon carried as a ''.38 Colt Revolver.'' Assuming that it fails completely to negative the provision of subdivision (e) that ''this restriction shall not be deemed to prohibit the carrying of ordinary tools or equipment'' etc., this provision is in the nature of an exception, rather than a part of the definition of the offense and need not be negatived. ''Such exceptions and provisos are to be negatived in the pleading only where they are descriptive of the offense or define it, and where they afford matter of excuse merely, they are to be relied on in defense.'' (*People* v. *H. Jevne Co.* (1919), 179 Cal. 621, 625 [178 P. 517]; *In re Lord* (1926), 199 Cal. 773, 777 [250 P. 714]; *People* v. *Pierce* (1939), 14 Cal.2d 639, 643 [96 P.2d 784].)

It is stated in defendant's brief that the evidence at the trial showed that he did in fact carry the weapon concealed, and hence he violated the state law rather than the ordinance. This fact does not appear in the record, and we cannot presume its existence in the face of the trial court's finding that defendant was guilty of the offense charged, which, as we have already stated, was not a violation of the state law. If the fact be as claimed, no conviction of the defendant can be proper on the present complaint, and on the entry of a judgment against him he will have a remedy by motion for new trial or by appeal. The reversal of the order arresting judgment will return the case to the condition it was in before the order was made, and the court will proceed to judgment (*People* v. *Lauman* (1922), 59 Cal.App. 144, 146 [210 P. 421]).

The order arresting judgment is reversed and the cause is remanded for further proceedings upon the finding of guilt, not inconsistent with this opinion.

Fox, J., and Kincaid, J., concurred.